Russell A. Cloutier by John E. Cloutier, Gdn. *vs.*
Celina Cloutier Lapane.

FEBRUARY 29, 1940.

Present: Moss, Capotosto, Baker and Condon, JJ.

Capotosto, J. This action in assumpsit on the common counts was tried by a justice of the superior court, sitting without a jury, and resulted in a decision for the defendant. The plaintiff's only exception is to this decision by the trial justice.

The sole issue in the case is whether the sum of $500 was loaned by the plaintiff to the defendant, or whether such sum was a payment on the cost of a house which had been constructed for and later deeded to the plaintiff by the defendant and her husband.

It appears in evidence that in 1917 the defendant married the plaintiff's father, a widower with nine children, five of

whom continued to live with him after the marriage. The plaintiff, then nine years old, was the youngest of these five children. He lived with his father and the defendant in Barrington from that time until the father died, July 18, 1932, and thereafter continued to live with the defendant until about a month before this action was brought on May 6, 1938. He then went to live with his brother, John E. Cloutier, in Dorchester, Massachusetts. The defendant remarried April 20, 1938.

The evidence shows that the defendant was kind to and friendly with the plaintiff during all the years that he lived with her. His schooling was limited, but there is no evidence that this condition was due to any infirmity of body or mind. In fact, he was employed in some gainful occupation with considerable regularity.

The defendant testified that she and her husband, as joint tenants, owned some vacant land adjoining their home in Barrington. Some four or five years before he died in 1932, they built a bungalow on this land at the total cost of $2400. This was done for the plaintiff's benefit and with his consent, the agreement or understanding among the three of them apparently being that they would deed that property to the plaintiff when his father deemed it advisable, or, in any event, when the plaintiff paid them what it cost to build the bungalow.

She further testified that in furtherance of this arrangement the plaintiff made an initial payment of $700; that, on completion, the bungalow was rented; that the net income from this source and whatever money the plaintiff gave to her husband out of his earnings were credited to the plaintiff as payments on the bungalow account; and that, in 1932, when her husband died, there was a balance of only $650 due on that account.

The defendant further testified that, on a few occasions, the plaintiff had asked for a deed of the property, but that her husband refrained from giving him a deed until the indebtedness had been substantially satisfied; that, about three weeks before he died, she urged him to give the plaintiff a deed of the property; that he then agreed to give the deed, and that shortly thereafter the property, which was held by herself and husband, as joint tenants, was duly conveyed to the plaintiff. She also testified that, when her husband gave his son the deed, he said to him: "The balance is not big now. If something should happen to me, pay your mother back the six hundred and fifty; $500.00, the insurance you are going to get and then the rest will be easy" and that the plaintiff answered that he was satisfied.

All this testimony stands uncontradicted and unchallenged in any way. The plaintiff did not testify in his own behalf, nor was any reason given for his failure to do so. Furthermore, there is nothing in the evidence to show that the property was not deeded to the plaintiff in the manner and at the time testified to by the defendant.

The plaintiff was the beneficiary in an insurance policy for $500 on the life of his father. About two weeks after his father's death, the plaintiff received this sum from the insurer in the form of a check, dated August 2, 1932. The undertaker's bill for the father's funeral was $533. A few days after receiving the check, the plaintiff and the defendant met the undertaker and the plaintiff's brother, Edward P. Cloutier, in the undertaker's office for the purpose of paying the funeral bill. There the plaintiff endorsed the check in blank and gave it to the defendant, who, having endorsed it in the same manner at the request of the undertaker, then turned it over to him in full satisfaction of his bill. The check was paid August 12, 1932.

The plaintiff's brother, in whose presence this transaction was carried out, testified that when the plaintiff produced

the check and was about to endorse it, he asked the plaintiff what he was "going to do", and that he answered that he was going to pay the funeral bill because "she (the defendant) wants me to." The witness further testified that, upon receiving this answer, he said nothing more. The defendant denied that this conversation took place, while the undertaker testified that he had no recollection of any such conversation. However, the evidence is clear that, from the time the undertaker's bill was paid in 1932 until this action was brought in 1938, no demand was made upon the defendant for the return of the $500 by the plaintiff or any one in his behalf.

The only other witness for the plaintiff was his brother, John E. Cloutier, of Dorchester, Massachusetts, with whom the plaintiff apparently went to live when he left the defendant's home in March or April of 1938. He testified that his father and brother came to his home in 1932, about a week before the father died, and that on this occasion the father said that "he had deeded a house over to Russell (the plaintiff) that originally belonged to him; that he didn't expect to live long; and that he also had an insurance policy that he had made to him years ago; and that he presumed that would take care of him until he would get on his feet or somebody would look out for him." This testimony relating to the declarations of a deceased person was admitted in evidence under the provisions of G. L. 1938, chap. 538, § 6.

Having in mind the plaintiff's unexplained absence in this case, it is advisable to refer briefly to the circumstances immediately preceding the bringing of this action. It appears in evidence that on May 2, 1938, the probate court of the town of Barrington appointed John E. Cloutier guardian of the person and estate of the plaintiff. Who petitioned for this appointment, or the ground upon which it was based, is not in evidence. The present action was brought four days after such appointment.

The trial justice found that the plaintiff did not loan $500 to the defendant, but that he paid her that sum on the bungalow account under the family agreement or understanding hereinbefore mentioned. Apparently answering an argument advanced in behalf of the plaintiff, the trial justice says in his decision: "Of course, the Court can only go by the evidence that is presented. I cannot indulge in any presumptions as to any mental incapacity on the part of Russell. I can't assume that, certainly at any time before the guardian is appointed, that he was *non compos mentis.*" There being no evidence that the plaintiff was afflicted with any mental infirmity at any time, the position taken by the trial justice on this point was proper.

The determination of the issue in this case depends to a considerable extent upon the credibility of the defendant, whom the trial justice had an opportunity to hear and observe while she was testifying. Her uncontradicted testimony, if believed, when considered in relation to all the other facts and circumstances in evidence, is a great, if not controlling, force. Upon this point, the trial justice says: "Frankly, I was impressed by Mrs. Lapane's apparent sincerity on the stand. She answered without any hesitation. It didn't seem to the Court she was making up her story. I was rather impressed by her testimony as being the testimony of one that was trying to tell what actually occurred."

We find nothing in the testimony of Edward P. and John E. Cloutier which outweighs the evidence for the defendant. In the circumstances, we cannot say that the trial justice was clearly wrong in deciding for the defendant.

The plaintiff's exception is overruled, and the case is remitted to the superior court for the entry of judgment on the decision.

*Lee A. Worrell,* for plaintiff.

*Eugene L. Jalbert,* for defendant.