JACK M. CHILDRESS AND WIFE, MARY B. CHILDRESS, v. RICHARD W. NORDMAN AND WIFE, VIRGINIA P. NORDMAN, AND CAROLINA REALTY COMPANY OF CHARLOTTE, INC.

(Filed 2 December, 1953.)

**1. Evidence §§ 6, 26—**

As a general rule, mere proof of the existence of a condition or state of facts at a given time does not raise an inference or presumption that the same condition or state of facts existed on a former occasion.

**2. Fraud § 2—**

In order for a misrepresentation to constitute the basis of an action for fraud it must be shown that the representation was untrue at the time it was made or at the time it was acted upon.

**3. Fraud § 12—Evidence held insufficient to show that representation of absence of termites was false at the time made or acted upon.**

Plaintiffs' evidence tended to show that in reliance upon the representation by the broker's agent that the house in question was free of termites, plaintiffs contracted for the purchase of the house and lot on 10 September and that deed pursuant to the contract was executed 15 October of that year. Plaintiffs' evidence further tended to show that termite damage was found in the house the last week of October, and plaintiffs introduced the testimony of an expert that, from his inspection of the premises some time in December, termites were present in the house the previous October. *Held:* Plaintiffs' evidence fails to show that the representation as to the absence of termites was untrue either on the date of the execution of the contract to convey or the date of the execution of the deed, and therefore nonsuit should have been allowed for failure to show that the representation was false at the time it was made and acted upon, since in the nature of things the representation was not a continuing one and there was no evidence that either the sellers or the broker acquired knowledge that the representation had been rendered untrue by a change in conditions at the time it was acted upon.

**4. Fraud § 2—**

Unless a representation is a continuing one, a subsequent change in conditions or state of facts cannot render the person making the representation liable unless he learns that the statement has become false before it is acted upon and is under duty to disclose the change in condition.

APPEAL by defendants from *Sharp, Special Judge,* and a jury, at February Term, 1953, of MECKLENBURG.

Civil action to recover damages allegedly caused by fraud inducing the purchase of a dwelling.

For ease of statement, Jack M. Childress and wife, Mary B. Childress, are called the plaintiffs; Richard W. Nordman and wife, Virginia P. Nordman, are characterized as the natural defendants; and Carolina Realty Company of Charlotte, Inc., is designated as the corporate defendant.

The salient facts are summarized in the numbered paragraphs set forth below.

1. The natural defendants owned a dwelling at 608 Marsh Road in Charlotte, which they listed with the corporate defendant, a real estate broker, for sale on a commission basis.

2. The corporate defendant entrusted the task of selling the dwelling to its sales manager, one Wyman.

3. Wyman interested the plaintiffs in the dwelling, and negotiated its sale to them.

4. The negotiations between Wyman and the plaintiffs ended on 10 September, 1951. On that day, the results of their negotiations were incorporated in a written contract between the plaintiffs and the natural defendants, which contained these stipulations: "Richard Nordham has this day sold and Jack M. Childress has this day purchased that certain parcel of property known as 608 Marsh Road, house and lot, at the price of $9,200.00. Upon the following terms: By cash to bind sale $200.00. G. I. Loan to be obtained $8,800.00. Balance cash by purchaser at closing $200.00. Sale of home contingent upon purchaser securing above loan . . . Deed to be made as directed." For practical purposes, the stipulation relating to the securing of the G. I. Loan was a formality. The Veterans Administration had already had the dwelling examined by one of its appraisers, and had issued an outstanding certificate stating that the dwelling and its site had an established reasonable value of $10,023.00 and that the dwelling needed no repairs.

5. The plaintiffs obtained the G. I. Loan and completed the payment of the purchase price by 15 October, 1951. On that day, the natural defendants deeded the dwelling and its site to the plaintiffs, who have possessed the property ever since.

6. This action was begun on 6 May, 1952. The complaint alleges in detail that the corporate defendant, which was acting as agent for the natural defendants, falsely and fraudulently represented to the plaintiffs that the dwelling was free from termites, and in that way induced the plaintiffs to purchase it for a price exceeding its true market value. It prays for judgment against all the defendants for the resultant damages. The answers deny the material averments of the complaint. The natural defendants pray for indemnity from the corporate defendant in the event of an adverse verdict.

7. Both sides offered evidence before Judge Sharp and the jury revealing the facts enumerated in paragraphs 1, 2, 3, 4, and 5.

8. The testimony adduced by the plaintiffs tended to show these additional facts: During the negotiations culminating in the contract of 10 September, 1951, Wyman inspected the dwelling with the plaintiffs and assured them that it was free from termites. The plaintiffs believed

this representation, and were induced by it to enter into the contract with the natural defendants for the purchase of the dwelling. The plaintiffs did not observe any manifestations of termites in the house until the last week in October, 1951, when they caused a linoleum rug to be removed from a bedroom floor and saw some indications of termites under the rug. Some weeks later, to wit, in December, 1951, the plaintiffs discovered substantial signs of the presence of termites in the house by examining the woodwork underneath the house, and concluded for the first time that "the termite problem . . . was serious." Thereafter, to wit, in March, 1952, William Ivey, who was an expert in termite eradication, inspected the woodwork underneath the house, found it infested with termites, and calculated that it would require a substantial outlay to eradicate them.

9. The plaintiffs undertook to show the presence of termites in the dwelling at the time at issue by certain testimony given by the plaintiff Jack M. Childress and the termite eradicator William Ivey. This specific testimony is not narrated in this statement of facts because it is quoted at length in the ensuing opinion.

10. The evidence presented by the defendants tended to show these things: Wyman did not make any representation to the plaintiffs that the dwelling was free from termites. In purchasing the building, the plaintiffs relied upon their own inspection of the premises, and upon truthful statements made to them by Wyman in respect to the contents of the outstanding certificate of the Veterans Administration. Nothing was known or observed by Wyman or any other person until after the purchase price had been paid in full and the deed had been delivered, indicating the presence of termites in the house.

11. These issues were submitted to the jury: (1) Did the defendant Carolina Realty Company falsely and fraudulently represent to the plaintiffs that the house described in the complaint was free of termites? (2) If so, did the plaintiffs reasonably rely upon said false and fraudulent representations? (3) What damages, if any, are the plaintiffs entitled to recover on account of such representation? (4) In selling the house to the plaintiffs, did the defendant Carolina Realty Company act as the agent of the defendants Richard W. Nordman and Virginia P. Nordman, and within the scope of its employment? The jury answered the first issue "Yes," the second issue "Yes," the third issue "$1,200.00," and the fourth issue "Yes."

12. The trial judge adjudged "that the plaintiffs have and recover of Carolina Realty Company, primarily, and Richard W. Nordman and Virginia P. Nordman, secondarily, the sum of $1,200.00, and . . . the cost of this action." The defendants excepted to this judgment and appealed, assigning errors.

*Bell, Horn, Bradley & Gebhardt for plaintiffs, appellees.*

*H. L. Strickland for defendants Richard W. Nordman and Virginia P. Nordman, appellants.*

*Brock Barkley for defendant Carolina Realty Company of Charlotte, appellant.*

ERVIN, J.    The chief question raised by the assignments of error is this: Did the trial judge err in refusing to dismiss the action upon a compulsory nonsuit after all the evidence on both sides was in?

This question must be answered in the 'affirmative. This is so simply because there was no evidence at the trial sufficient to show that the representation concerning the state of the dwelling was false either at the time it was made by Wyman or at the time it was acted on by the plaintiffs. *Cofield v. Griffin, ante,* 377, 78 S.E. 2d 131; *Whitmire v. Heath,* 155 N.C. 304, 71 S.E. 313; *Cash Register Company v. Townsend,* 137 N.C. 652, 50 S.E. 306, 70 L.R.A. 349; *Ramsey v. Wallace,* 100 N.C. 75, 6 S.E. 638; *Lunn v. Shermer,* 93 N.C. 164; 37 C.J.S., Fraud, section 17.

An analysis of the testimony invoked by the plaintiffs on this phase of the case demonstrates the soundness of this conclusion. '    '

Wyman made the representation that the house was free from termites early in September, 1951, and the plaintiffs acted upon the representation on 10 September, 1951, by contracting for the purchase of the property. They merely performed the obligations of their contract when they subsequently completed the payment of the purchase price and accepted the deed.

The plaintiffs did not attempt to prove the probable time of the entry of the termites into the dwelling by evidence of the habits or propensities of these insects in respect to forsaking old haunts and invading new ones. They undertook to establish this crucial date by calling the plaintiff Jack M. Childress and the termite eradicator William Ivey to the witness stand.

Childress deposed that this event occurred during the last week of October, 1951: "After the painting and tile work was completed, I had the floors refinished. I called in Mr. Simpson to do the work, and that was when I discovered about the termites. In one of the rooms there was a linoleum rug nailed down to the floor, and when the sanding man tore the rug up, he called me and said he thought I had termites. I went out there. From all indications, I would say it was termites. I told him to replace the floors that was needed and I would call some exterminating company to come out and inspect the house. He replaced the floorboards that needed to be replaced in that bedroom."

This testimony appears at first glance to be fraught with much evidential light. But when its vague generalities are reduced to their specific

probative proportions, it leaves everything to uncertain conjecture except the naked fact that during the last week of October, 1951, Childress observed upon a bedroom floor in the dwelling indications of some termite damage whose character and extent he did not reveal. This interpretation of his evidence is corroborated by his own frank admission that he did not deem "the termite problem in the house" to be serious until sometime in December, 1951, when he "went underneath the house" and discovered other indications of termite injury.

Ivey gave this evidence in response to a hypothetical question put to him by counsel for the plaintiffs: "From my experience in that business (*i.e.,* termite eradication), I would definitely say that in my opinion those termites were present in that building in the previous October. It would not necessarily take them that period of time to do the damage they had done. We have replaced sills, in some instances, where termites had eaten them out in three and a half months. But through our experience in the field, we can detect where it is rather new damage, or where it is an old damage; and in this particular case, it really indicated that it had been active and going on for quite some time."

When all is said, the testimony of Childress and Ivey merely shows the presence of termites in the dwelling during the last week of October, 1951. This being true, the case falls within the purview of the general rule that mere proof of the existence of a condition or state of facts at a given time does not raise an inference or presumption that the same condition or state of facts existed on a former occasion. *Jarvis v. Vanderford,* 116 N.C. 147, 21 S.E. 302; *Liverpool & London & Globe Ins. Co. v. Nebraska Storage Warehouses,* 96 F. 2d 30; *Andresen v. Kaercher,* 38 F. 2d 462; *W. F. Corbin & Co. v. U. S.,* 104 C. C. A. 278, 181 F. 296; *Killoren Elec. Co. v. Hon,* 211 Ark. 403, 200 S.W. 2d 403; *Eudora Motor Co. v. Womack,* 195 Ark. 74, 111 S.W. 2d 530; *In re Dolbeer,* 149 Cal. 227, 86 P. 695, 9 Ann. Cas. 795; *Glenn v. Tankersley,* 187 Ga. 129, 200 S.E. 709; *Erskine v. Davis,* 25 Ill. 251; *Blank v. Township of Livonia,* 79 Mich. 1, 44 N.W. 157; *Snowwhite v. Metropolitan Life Ins. Co.,* 344 Mo. 705, 127 S.W. 2d 718; *Conduitt v. Trenton Gas & Electric Co.,* 326 Mo. 133, 31 S.W. 2d 21; *Doran v. U. S. Building & Loan Ass'n,* 94 Mont. 73, 20 P. 2d 835; *Slone-Carter Grain Co. v. Jones,* 56 N.M. 712, 248 P. 2d 1065; *Niehoff-Schultze Grocery Co. v. Gross,* 205 App. Div. 67, 199 N.Y.S. 196, affirmed in 237 N.Y. 509, 143 N.E. 722, and reargument denied in 237 N.Y. 563, 143 N.E. 743; *Shupp v. Farrar,* 85 Ohio App. 366, 88 N.E. 924; *Champlin Refining Co. v. Smith,* 190 Okl. 287, 123 P. 2d 253; *Vacuum Oil Co. v. Quigg,* 127 Okl. 61, 259 P. 858; *Cloutier v. Lapane,* 64 R.I. 181, 11 A. 2d 620; *Hentz v. Wallace's Adm'r,* 153 Va. 437, 150 S.E. 389; *Pierce v. Stolhand,* 141 Wis. 286, 124 N.W. 259. This general rule is based on the sound concept that inferences or presumptions of fact

do not ordinarily run backward. *Beacon Trust Co. v. Wright,* 288 Mass. 1, 192 N.E. 70; *Blodgett v. Springfield St. Ry. Co.,* 261 Mass. 333, 158 N.E. 660; *Hanna v. Stedman,* 230 N.Y. 326, 130 N.E. 566; *Daniff v. Charles R. McCormick & Co.,* 105 Or. 697, 210 P. 703; *McDaniel v. Crabtree,* 143 Wash. 168, 254 P. 168; 31 C.J.S., Evidence, section 140.

The legal standing of the plaintiffs would not be strengthened on the present record if the evidence were interpreted to show that they acted on Wyman's representation on 15 October, 1951, when they completed the payment of the purchase price and accepted the deed, and that the termites were present in the dwelling as early as that day. The case would be controlled in that event by this rule of law: "Except where it may be regarded as continuing in character, the truth or falsity of a representation is generally to be determined as of the time when it was made, and subsequent changes in the condition of affairs cannot affect the liability of the person who made it. One who knows, however, that a statement true when made has become false has a duty to disclose the change in conditions." 23 Am. Jur., Fraud and Deceit, section 114.

We must indulge the assumptions on the present record that Wyman made his representation on or about 10 September, 1951, and that it was true when he made it.

Under the evidence adduced at the trial, there is no basis whatever for the view that when Wyman assured the plaintiffs in express terms on or about 10 September, 1951, that the dwelling was then free from termites, he impliedly represented to them that it would be in the same happy state on 15 October, 1951. As a consequence, Wyman's representation cannot be regarded as a continuing one, and its truth or falsity must be determined as of 10 September, 1951, rather than as of 15 October, 1951. It is to be noted, moreover, that the evidence offered at the trial does not indicate that any of the defendants or any of their agents acquired any knowledge at any time before the final consummation of the sale on 15 October, 1951, that Wyman's representation of 10 September, 1951, had been rendered untrue by a change in conditions.

The judgment is

Reversed.