ANNIE L. MILLER v. PHILIP E. LUCAS, ADMINISTRATOR OF THE ESTATE OF V. W. DOSS AND U-HAUL COMPANY.

(Filed 13 April, 1966.)

**1. Evidence § 16—**

Whether evidence of the existence of a condition or state of facts at one time is competent to prove the existence of such condition or state of facts at a prior time depends upon the length of time intervening and whether, in view of the nature of the subject matter and circumstances, the condition would not ordinarily exist at the time referred to by the evidence unless it had also existed at the prior time in question.

**2. Same; Automobiles § 41r—**

Evidence that only a few hours after a trailer had been attached to an automobile by a "ball and socket" hitch the trailer became detached while the automobile was traveling some 25 miles per hour on a city street, causing the accident in suit, and that immediately after the accident part of the socket having a screw for fastening the socket to the ball was broken off, and the safety chains were in the hooks on the trailer, *held* competent evidence that the defect in the coupling mechanism existed at the time the trailer was attached and that the safety chains had not then been attached to the rear of the automobile.

**3. Appeal and Error § 41—**

Testimony that one tort-feasor stated that the other tort-feasor attached the trailer causing the accident to his automobile and that as it was attached "he did not get out of the automobile" is not prejudicial to the other tort-feasor when such other tort-feasor introduces evidence that its dealer hitched the trailer to the car.

MILLER *v.* LUCAS.

**4. Automobiles §§ 6, 21—**

G.S. 20-123(b), specifying the safety requirements of trailers and their couplings is intended and designed to prevent injury to persons and property on the highways, and the violation of the statutory requirements is negligence *per se.*

**5. Automobiles § 7—**

Every motorist is required to exercise reasonable care to avoid injury to persons or property of another, and the failure to exercise such care which proximately causes injury is actionable. G.S. 20-140.

**6. Automobiles § 41r—**

Allegation and evidence to the effect that the agents of a trailer rental service attached a trailer to the automobile of defendant's intestate and that intestate stated that he *did not even get out of his automobile* when the trailer was attached, together with evidence that the safety chains were not attached to the rear of the automobile and of defects in the coupling mechanism which caused the trailer to become detached in traffic, is sufficient to be submitted to the jury upon the issue of intestate's negligence *in failing to exercise reasonable care to see that the trailer was* properly attached to the rear of his car. G.S. 20-140, G.S. 20-123(b).

**7. Trial § 21—**

So much of defendant's evidence which is favorable to plaintiff and tends to clarify and explain plaintiff's evidence and is not inconsistent therewith is properly considered on motion to nonsuit.

**8. Automobiles § 41r—**

Evidence that agents of a trailer rental service attached a leased trailer to intestate's automobile, together with evidence permitting the inference that at that time there was a defect in the coupling mechanism and that the safety chains were not attached to the rear of the car, and that shortly thereafter the trailer became detached in traffic, causing the accident in suit, *held* sufficient to be submitted to the jury on the issue of negligence of the trailer rental service. G. S. 20-123(b).

**9. Automobiles § 46—**

An instruction to answer the issue of negligence in the affirmative if the jury were satisfied by the greater weight of the evidence that defendant was negligent as the court had defined that term or had violated the safety statutes read to the jury, without instructing the jury in any part of the charge as to what facts were necessary to be found by the jury to constitute negligence on defendant's part, must be held for prejudicial error in failing to apply the law to the factual situations presented by the evidence.

**10. Trial § 33—**

It is the duty of the trial court to explain the law arising on the evidence as to all substantial features of the case adduced by the evidence, and the mere declaration of the law in general terms and the statement of the contentions of the parties is not sufficient. G.S. 1-180.

**11. Damages § 14—**

Evidence tending to show that plaintiff was jarred and her body swayed to the right in the accident in suit, that immediately after the accident

MILLER v. LUCAS.

plaintiff suffered pain in her lower back, but that plaintiff thereafter returned to work although she continued to have pain in her back, improving and worsening during treatment by physicians, that later the condition became worse, and that almost eight months after the accident she was operated on for a ruptured disc, without medical expert testimony that the ruptured disc could or might have been caused by the injury received in the collision, *is held* insufficient predicate for the award of damages for the ruptured disc or the operation.

MOORE, J., not sitting.

PLESS, J., took no part in the consideration or decision of this case.

APPEAL by defendants from *Crissman, J.,* 18 January 1965 Civil Session of FORSYTH. Docketed and argued as Case No. 449 Fall Term 1965, and docketed as Case No. 443 Spring Term 1966.

Civil action to recover damages for personal injuries and demolition of an automobile.

According to plaintiff's allegations in her amended complaint and her evidence, about 5:30 p.m. on 30 May 1963 she was operating her automobile in a southerly direction on South Broad Street in the city of Winston-Salem and was meeting an approaching automobile driven by V. W. Doss in a northerly direction on the same street, which automobile had attached to its rear a two-wheel trailer owned by U-Haul Company; that as the two automobiles approached each other the trailer became detached from the Doss automobile, veered to the left of the street in the direction it was going, and collided with the left side of her automobile, injuring her and demolishing her automobile.

The amended complaint alleges that defendant Doss was negligent in the operation of his automobile as follows: He operated it in a careless and reckless manner, in violation of G.S. 20-140; he operated it with a trailer attached to its rear and failed and neglected to firmly attach the trailer to the rear of his automobile drawing it, and without having it so equipped that it would not shake and break loose, in violation of G.S. 20-123(b). We omit other allegations of negligence, because plaintiff has offered no evidence to support them.

The amended complaint alleges that defendant U-Haul Company was negligent as follows: It allowed defendant Doss to use the trailer without first ascertaining that the same was properly and securely attached to the rear of the Doss automobile, in violation of G.S. 20-123(a); that the trailer was not properly equipped in such manner as to prevent its shaking behind the said vehicle operated by Doss, in violation of G.S. 20-123; that it furnished the said trailer to defendant Doss and failed to fasten the safety chains upon the

trailer. We omit an allegation of negligence that it furnished the trailer to Doss without making any provision for brakes upon the trailer and without equipping the same with brakes, in violation of G.S. 20-124(e), because plaintiff has no evidence to support such an allegation.

The amended complaint alleges that the negligence of the two defendants concurred and cooperated to cause the collision and injury to plaintiff's person and demolition of her automobile.

The amended complaint further alleges that Doss was acting as the servant, agent, and employee of U-Haul Company; that the trailer was the property of U-Haul Company and was being used with its knowledge and consent.

The answer of defendant U-Haul Company denies every allegation in the amended complaint, except it admits the residence of the parties. As a further answer and defense it alleges: It leased a trailer to defendant Doss for his own use under a written lease agreement, and that defendant Doss was at no time its agent, servant, or employee.

The answer of defendant Doss admits the allegations of the amended complaint as to the residence of the parties; that on 30 May 1963 plaintiff was driving her automobile in a southerly direction along South Broad Street in the city of Winston-Salem, and that he was driving his automobile in a northerly direction along said street pulling a trailer belonging to U-Haul Company; that the trailer came loose from his automobile and struck plaintiff's automobile; that he was acting as an agent, servant, and employee of defendant U-Haul Company, and that the trailer was the property of defendant U-Haul Company and was being used with the consent and knowledge of the U-Haul Company; that defendant U-Haul Company, by its servants and employees, was negligent, in that it hooked the trailer to his automobile and failed to fasten the safety chains upon the trailer. It denies that he was negligent and all other allegations in the amended complaint.

In the statement of the case on appeal it is said that defendant Doss died shortly after he filed his answer. In the brief of defendant Lucas, administrator of the estate of V. W. Doss, it is stated that Doss was killed in an accident, and defendant Philip E. Lucas, administrator of the estate of V. W. Doss, was substituted as a defendant in his place. Plaintiff and defendant U-Haul Company offered evidence; Lucas, administrator, offered no evidence.

The following issues were submitted to the jury and answered as shown:

"(1) Was the Plaintiff injured and her automobile damaged by the negligence of the Defendant's intestate, V. W.

Doss, as alleged in the complaint?

"ANSWER:  Yes.

"(2)  Was the Defendant's intestate the agent of the Defendant U-Haul Company, as alleged in the complaint?

"ANSWER:  No.

"(3)  Was the Plaintiff injured and her automobile damaged by the negligence of the Defendant U-Haul Company, as alleged in the complaint?

"ANSWER:  Yes.

"(4)  What amount, if any, is the Plaintiff entitled to recover:

(a)  For personal injuries?

"ANSWER:  $20,000.00.

(b)  For damage to her automobile?

"ANSWER:  $325.00."

From a judgment based on the verdict that plaintiff have and recover from both defendants, and each of them, the sum of $20,000 for personal injuries and $325 for demolition of her automobile, and that the costs be taxed against the defendants, each defendant appealed to the Supreme Court.

*Hudson, Ferrell, Petree, Stockton, Stockton & Robinson by W. F. Maready and J. Robert Elster for Philip E. Lucas, Administrator of the Estate of V. W. Doss, defendant appellant.*

*Womble, Carlyle, Sandridge & Rice by Grady Barnhill, Jr., for U-Haul Company, defendant appellant.*

*White, Crumpler, Powell, Pfefferkorn and Green by Harrell Powell, Jr., for plaintiff appellee.*

PARKER, C.J.  Each defendant assigns as error the denial of its and his motion for judgment of compulsory nonsuit made at the close of all the evidence.

Plaintiff's evidence, considered in the light most favorable to her, tends to show the following facts: Plaintiff, a 40-year-old woman, about 5 p.m. on 30 May 1963 was driving her automobile at a speed of 25 to 30 miles an hour south on South Broad Street in the city of Winston-Salem. Approaching her was an automobile with a two-wheel trailer attached to its rear driven by defendant Doss at a speed of 25 to 28 miles an hour north on the same street. The Doss automobile traveling down grade "hit the dip" in the street, and the trailer came loose from the Doss automobile, "swung around to the left," and hit the side of her automobile. The tongue

of the trailer came inside her automobile and broke out the back side glass and all the rear glass, and practically demolished her automobile. No part of the trailer hit her, but the collision jarred her and swayed her body to the right. She stopped her automobile at the scene, got out and saw the trailer which had been pulled against the curb out of the way of traffic. The safety chains on the trailer were in the hooks on the trailer. When she started walking around, she had pain in her lower back.

T. B. Leach, a police officer of the city of Winston-Salem, arrived at the scene about 5:55 p.m. At the scene the street is about 32 feet wide. The two automobiles, the trailer, and Doss were there when he arrived. The trailer was equipped with a ball-type hitch designed to be clamped to the rear bumper of Doss's automobile. Leach testified that he examined the trailer, and then testified as follows: "[T]he trailer was loaded with tree limbs and branches. The hitch, which was a ball-and-socket hitch, the cap fits down over the ball which is, of course, fastened to the car, and this cap then has a kind of a screw on top of it with which to tighten the coupling there — this top was broken off; the part that you screw down to tighten the coupling, it was broken off. . . . The only connection I found attached to the automobile was the knob or the ball, I call it, to which the trailer is fastened." He also testified that Doss told him at the scene: "Mr. Doss stated that he had some work to do in some trees and he needed a trailer, so he went to the service station at Waughtown and Peachtree and rented the trailer from there, and that they hitched the trailer up for him, he did not even get out of the car." Lucas, administrator, did not object to this evidence.

Evidence offered by U-Haul Company as is favorable to plaintiff or tends to clarify or explain testimony offered by plaintiff not inconsistent therewith (Bundy v. Powell, 229 N.C. 707, 51 S.E. 2d 307) tends to show these facts: On the afternoon of 30 May 1963 defendant Doss leased the trailer here from a U-Haul Company dealer, Irvin H. Thomas, Jr., and signed a written lease agreement with U-Haul Company. Thomas attached the trailer to the rear of Doss's automobile. About 7 p.m. on the same day and after it had collided with plaintiff's automobile, Doss brought the trailer back to this dealer. Upon objection by Lucas, administrator, this evidence was not admitted against him, and U-Haul Company excepted. The ball-type hitch when properly clamped to the rear bumper of an automobile prevents "the trailer from shaking or snaking" behind the automobile to which it is attached. If the ball-type hitch is broken, or the handle on top is broken, it would have a tendency to

cause the trailer to break loose. The trailer here had safety chains fastened to each corner of the trailer body to be hooked to the rear of the chassis of the towing automobile. The purpose of these chains when properly fastened is to keep the trailer attached to the towing vehicle in case something occurs to cause the trailer hitch to come loose or in case it does come loose. If these chains are properly installed, even if the trailer hitch breaks, the trailer would not break loose. The safety chains serve as a precautionary measure should the trailer become disconnected. The U-Haul Company rents trailers. Its employees are taught how to hook trailers to its customers' automobiles. It instructs its employees to take charge of hooking its trailers to its customers' automobiles. When a trailer is rented from U-Haul Company, its procedure is to write up a lease contract for the customer to sign.

Defendant U-Haul Company contends "the testimony of the broken condition of the hitch after the impact was not competent to prove the condition of the latch before the impact," and cites the following language from *Childress v. Nordman,* 238 N.C. 708, 78 S.E. 2d 757, in support of its contention:

> "This being true, the case falls within the purview of the general rule that mere proof of the existence of a condition or state of facts at a given time does not raise an inference or presumption that the same condition or state of facts existed on a former occasion. [Citing numerous cases.] This general rule is based on the sound concept that inferences or presumptions of fact do not ordinarily run backward. [Citing cases.]"

However, the general rule stated in the *Childress* case above quoted is not of universal application. "Whether the past existence of a condition or state of facts may be inferred or presumed from proof of the existence of a present condition or state of facts, or proof of the existence of a condition or state of facts at a given time, depends largely on the facts and circumstances of the individual case, and on the likelihood of intervening circumstances as the true origin of the present existence or the existence at a given time. Accordingly, in some circumstances, an inference as to the past existence of a condition or state of facts may be proper, as, for example, where the present condition or state of facts is one that would not ordinarily exist unless it had also existed at the time as to which the presumption is invoked." 31A, C.J.S., Evidence, § 140, pp. 306-07.

This is said in Stansbury, N. C. Evidence, 2d Ed., § 90:

> "Whether the existence of a particular state of affairs at

one time is admissible as evidence of the same state of affairs at another time, depends altogether upon the nature of the subject matter, the length of time intervening, and the extent of the showing, if any, on the question of whether or not the condition had changed in the meantime. The question is one of the materiality or remoteness of the evidence in the particular case, and the matter rests largely in the discretion of the trial court. . . . There has been some reference in recent cases to a 'general rule' that inferences 'do not ordinarily run backward'; but so much depends upon circumstances that it seems a mistake to think in terms of a 'rule' with respect to this or any other of the many factors that must be considered."

In *Blevins v. Cotton Mills,* 150 N.C. 493, 64 S.E. 428, the Court said:

"On the admission of testimony as to the condition of the machine not long before the trial of the cause and twenty-two months after the occurrence, the authorities are very generally to the effect that when the condition of an object at a given time is the fact in issue its condition at a subsequent period may be received in evidence, when the circumstances are such as to render it probable that no change has occurred."

According to the further answer and defense in the answer of U-Haul Company, it leased the trailer here to V. W. Doss. According to the testimony of its dealer, Irvin H. Thomas, Jr., he attached the trailer to the back of Doss's automobile on the afternoon of 30 May 1963. About 5 p.m. on the same afternoon Doss was driving his automobile with the trailer attached at a speed of 25 to 30 miles an hour on South Broad Street in the city of Winston-Salem traveling down grade and "hit the dip," and the trailer came loose from his automobile, "swung to the left," and hit the side of plaintiff's automobile which was meeting the Doss automobile. The trailer was pulled against the curb out of the way of traffic. Plaintiff got out of her automobile, went back to the trailer, and at that time the safety chains on the trailer were in the hooks on the trailer. About 5:55 p.m. on the same afternoon T. B. Leach, a police officer of the city of Winston-Salem, arrived at the scene and saw the trailer. He testified as follows as to the condition of the trailer at that time: "The hitch, which was a ball-and-socket hitch, the cap fits down over the ball which is, of course, fastened to the car, and this cap then has a kind of a screw on top of it with which to tighten the coupling there — this top was broken off; the part that you screw down to tighten the coupling, it was broken off. . . .

The only connection I found attached to the automobile was the knob or the ball, I call it, to which the trailer is fastened." Considering the fact that the trailer became detached from the Doss automobile when it was traveling 25 to 28 miles per hour on a city street of Winston-Salem only a few hours after it had been attached to his automobile by a representative of U-Haul Company; the lack of evidence of any likelihood of any intervening circumstances which could have caused the trailer to come loose from the Doss automobile; the fact that the trailer would not ordinarily have come loose from the Doss automobile if the ball-and-socket hitch had not been defective when it was attached to the Doss automobile and if the safety chains had been hooked to the rear of the Doss automobile; and considering all the other facts and circumstances of this particular case, it is our opinion, and we so hold, the evidence was competent, and permits the inference that the condition of the trailer immediately after the collision, in respect to the defective ball-and-socket hitch and in respect to the safety chains on the trailer being in the hooks on the trailer, was the same condition in these respects that the trailer was in when Doss drove away from the U-Haul Company with the trailer attached to the rear of his automobile a few hours before the collision.

Both defendants assign as errors the admission of testimony by plaintiff, over their objections, as to the condition of the trailer when she saw it immediately after the collision. Lucas, administrator, cites no authority to support his contention. Defendant U-Haul Company cites in support of its contention the quotation from *Childress v. Nordman* quoted above. The evidence was competent, and defendants' assignments of error in respect thereto are overruled.

U-Haul Company assigns as error that the Court, over its objection, permitted officer Leach to testify to the effect that Doss told him at the scene that he rented the trailer and they hitched the trailer up for him, and he did not get out of the automobile. U-Haul Company alleges in its further answer and defense that it leased the trailer to Doss. Its evidence is that its dealer hitched the trailer to Doss's automobile. It would seem Doss's statement that he did not get out of the automobile in no way affects the liability of U-Haul Company, but was an admission against interest by Doss. This assignment of error is overruled.

G.S. 20-123 (b) provides: "No trailer or semi-trailer shall be operated over the highways of the State unless such trailer or semi-trailer be firmly attached to the rear of the motor vehicle drawing same, and unless so equipped that it will not snake, but will

travel in the path of the wheels of the vehicle drawing such trailer or semi-trailer, which equipment shall at all times be kept in good condition." A violation of this statute intended and designed to prevent injury to persons or property on the highways is negligence *per se.* 1 Strong, N. C. Index, Automobiles, § 6.

> "One using a vehicle trailer on the public highways is required to exercise reasonable care, both as to the equipment of the trailer and as to the operation of the vehicle to which it is attached. . . .
>
> "The owner of a motor vehicle to which a trailer is attached is generally held liable for loss or injury proximately by reason of a defect in the trailer fastening or hitch, resulting in the trailer breaking loose and becoming detached from the motor vehicle. Some statutes require certain safety devices in connection with the use of trailers, and liability for resulting damages may be predicated upon the failure to comply with such requirements. However, the owner of a motor vehicle with a trailer attached is generally held not liable for loss or injury inflicted by reason of a defect in the trailer fastening or hitch resulting in the trailer breaking loose, where he did not have knowledge of such defect, and would not have discovered it by reasonable inspection." 8 Am. Jur. 2d, Automobiles and Highway Traffic, § 714.

"In the case of a trailer not controlled in its movements by any person thereon, the operator of the vehicle to which the trailer is attached must exercise reasonable care to see that it is properly attached and that the progress of the two vehicles does not cause danger or injury. . . ." 60 C.J.S., Motor Vehicles, § 339, b, p. 799.

We have held many times that G.S. 20-140 requires every operator of a motor vehicle to exercise reasonable care to avoid injury to persons or property of another. A failure to so operate proximately causing injury to another gives rise to a cause of action. *Scarlette v. Grindstaff,* 258 N.C. 159, 128 S.E. 2d 221, and cases cited.

Considering plaintiff's evidence in the light most favorable to her, and considering so much of U-Haul Company's evidence as is favorable to her or tends to clarify or explain evidence offered by her not inconsistent therewith *(Bundy v. Powell, supra),* and the allegations in Doss's answer that U-Haul Company "failed to fasten the safety chain upon the said trailer," and Doss's statement to officer Leach at the scene to the effect that he did not get out of his automobile when they attached the trailer to it, it is

clear that a jury could find that Doss failed to exercise reasonable care to see that the trailer was properly attached to the rear of his automobile, that he was operating his automobile in violation of the provisions of G.S. 20-140 and in violation of the provisions of G.S. 20-123(b), that this constituted negligence on his part which proximately resulted in injury to plaintiff and demolition of her automobile. The court properly overruled the motion of Lucas, administrator, for judgment of compulsory nonsuit made at the close of all the evidence. Our opinion finds support in the following cases having to a considerable degree similar factual situations: *Steele v. Commercial Milling Co.*, 50 F. 2d 1037, 84 A.L.R. 278; *Barango v. E. L. Hedstrom Coal Co.*, 12 Ill. App. 2d 118, 138 N.E. 2d 829; *Bidleman v. Wright*, 175 Ohio St. 405, 195 N.E. 2d 904; *Staples v. Spelman*, 53 R.I. 244, 165 A. 783.

U-Haul Company's evidence favorable to plaintiff is that it owned and leased the trailer to Doss, and that it attached it to the back of Doss's automobile; that its trailer had chains fastened to each corner of the trailer body to be hooked to the rear of the chassis of the towing vehicle; that the purpose of the chains when properly fastened is to keep the trailer attached to the towing vehicle in case something occurs to cause the trailer hitch to come loose or in case it does come loose. Considering plaintiff's evidence in the light most favorable to her, and considering so much of U-Haul Company's evidence as is favorable to plaintiff or tends to clarify or explain evidence offered by plaintiff not inconsistent therewith, it would permit, as above stated, a jury to find that U-Haul Company's trailer when U-Haul Company attached it to Doss's automobile had a defective ball-and-socket type hitch which U-Haul Company knew of or could have discovered by reasonable inspection, and that U-Haul Company did not hook the safety chains on the trailer to the rear of the chassis of Doss's automobile; that consequently when the defective ball-and-socket type hitch came loose, the trailer came loose from Doss's automobile and swerved to the left and collided with plaintiff's automobile; that U-Haul Company under the circumstances failed to exercise care commensurate with the danger to be apprehended in order to prevent injury to others; that this constituted negligence; that the negligence of U-Haul Company and Doss was joint and several, constituting a violation by both defendants of the provisions of G.S. 20-123(b), and concurred and cooperated to bring about the collision of the trailer with plaintiff's automobile, which proximately resulted in injury to plaintiff. The court properly overruled U-Haul

Company's motion for judgment of compulsory nonsuit made at the close of all the evidence.

Lucas, administrator, assigns as error the judge's instruction to the jury on the first issue, to wit, was plaintiff injured and her automobile damaged by the negligence of defendant's intestate V. W. Doss, as alleged in the complaint. On this issue the judge charged to this effect: If the jury is satisfied by the greater weight of the evidence that Doss in the operation of his automobile with the trailer attached was negligent, as the court has defined negligence for you, that is if he was operating his automobile in a manner other than the manner in which a reasonable and prudent man would have driven it under similar conditions, or if you are satisfied that his driving was a violation of the reckless driving statute, which the court will now read to you, that will be negligence, and if you are satisfied by the evidence that the negligence of this defendant or his violation of either section of the reckless driving statute proximately caused or was a proximate cause of the collision, it would be your duty to answer the first issue, Yes; if you are not so satisfied you would answer it, No. Nowhere in the charge did the judge instruct the jury what facts it was necessary for them to find to constitute negligence on Doss's part. This charge left the jury unaided to apply the law to the facts relating to the first issue as shown by plaintiff's evidence and by Doss's administrator's evidence.

The provisions of G.S. 1-180 require that the trial judge in his charge to the jury "shall declare and explain the law arising on the evidence in the case," and unless this mandatory provision of the statute is observed, "there can be no assurance that the verdict represents a finding by the jury under the law and on the evidence presented." Smith v. Kappas, 219 N.C. 850, 15 S.E. 2d 375. This Court has consistently ruled that G.S. 1-180 imposes upon the trial judge the positive duty of declaring and explaining the law arising on the evidence as to all the substantial features of the case. A mere declaration of the law in general terms and a statement of the contentions of the parties is not sufficient to meet the statutory requirements. Hawkins v. Simpson, 237 N.C. 155, 74 S.E. 2d 331, where 14 of our cases are cited; Glenn v. Raleigh, 246 N.C. 469, 98 S.E. 2d 913. In Lewis v. Watson, 229 N.C. 20, 47 S.E. 2d 484; this Court said, quoting from Am. Jur.: "The statute requires the judge 'to explain the law of the case, to point out the essentials to be proved on the one side or the other, and to bring into view the relations of the particular evidence adduced to the particular issues

involved.' 53 Am. Jur., Trial, section 509." This assignment of error is good.

Each defendant assigns as error the charge as to the measure of damages to be recovered by plaintiff, if any, for personal injuries, on the ground, *inter alia,* that this charge would permit the jury to award damages for plaintiff's expenses incurred by her to Dr. E. O. Jeffreys and a hospital for an operation performed by him on her for a ruptured disc in her back on or about 14 February 1964, on the ground that there is no evidence offered by her to show a causal connection between the injuries sustained by her in the collision and her ruptured disc. After instructing the jury on the measure of damages, the court instructed the jury that plaintiff contends, *inter alia,* that her hospital and medical expenses amounted to a sum in excess of $1,100 (according to her testimony her hospital bill when she was operated on for a ruptured disc in her back was $415.50, and Dr. Jeffrey's bill was $400), and that she had to have this operation for a ruptured disc. In stating defendants' contention the judge charged, *inter alia,* they contended there is no evidence the ruptured disc was caused by the collision; that no doctor testified the ruptured disc was caused by the collision.

It seems plain that the award by the jury to plaintiff for personal injuries of $20,000 was based in large measure upon the fact that the jury found that the ruptured disc in plaintiff's back was caused by the collision of the trailer with her automobile.

Plaintiff's evidence as to her injuries is to this effect: The collision occurred about 5 p.m. on 30 May 1963. When the collision occurred she was jarred and swayed. As she tried to hold on to the steering wheel, her body swayed to the right. She did not feel anything during the collision. After the collision she got out of her automobile. She felt faint. A man took her arm and she sat down on the curb for a while. When she started walking around she had pain in her lower back, just below the belt line, two or three inches below the belt line. The pain in her back was just an ache. She went to work the following day and worked all day, running a single needle machine. The first day after the collision her back hurt all day. From May 30 to June 24 her back continued to hurt in the same place, in the lower part of her back, and up between her shoulders. She took Anacins to relieve the pain. On June 24 she worked, but got off and for the first time went to see a doctor, Dr. Isabel Bittinger. Dr. Bittinger had her x-rayed. After the x-ray she went back to Dr. Bittinger's office and Dr. Bittinger started electrical treatments on her back. She continued to work at her same job, and continued to go to Dr. Bittinger until October 1963.

In October the pain grew worse and was going down into her leg. Dr. Bittinger again started treatments, and advised her to stay out of work for two weeks. Dr. Bittinger continued her treatments, and she got better. By the end of November she was improved. On the first of January 1964 it began hurting again, getting worse, and she went back to Dr. Bittinger on the last of January, and she started giving her treatments again. It did not improve. She worked every day until she went to the hospital on 7 February 1964. In the hospital she came under the care of Dr. E. O. Jeffreys, who formed the opinion that she had a ruptured disc, and Dr. Jeffreys operated on her for this on or about 14 February 1964. Dr. Bittinger, a witness for plaintiff, testified, "There are many things that can cause a slipped disc."

Neither Dr. Bittinger nor Dr. Jeffreys testified that the ruptured disc in plaintiff's back could or might have been caused by the injury she received in the collision. In the record there is not a scintilla of medical evidence that plaintiff's ruptured disc might, with reasonable probability, have resulted from the collision on 30 May 1963.

Whether either Dr. Bittinger or Dr. Jeffreys could have expressed an expert, medical opinion on the matter of causation of plaintiff's ruptured disc, in answer to a properly framed hypothetical question, we cannot say. No such question was asked either of them. The jurors under the judge's charge, and the statement by the judge of plaintiff's contentions in respect to her ruptured disc, were left to speculate about a matter which frequently troubles even orthopedic specialists. Sharp, J., with her usual clarity, said for the Court in *Gillikin v. Burbage*, 263 N.C. 317, 139 S.E. 2d 753:

> " 'One of the most difficult problems in legal medicine is the determination of the relationship between an injury or a specific episode and rupture of the intervertebral disc.' 1 Lawyers' Medical Cyclopedia § 7.16 (1958 Ed.).
>
> "There are many instances in which the facts in evidence are such that any layman of average intelligence and experience would know what caused the injuries complained of. *Jordan v. Glickman*, 219 N.C. 388, 14 S.E. 2d 40; Annot., Admissibility of opinion evidence as to cause of death, disease, or injury, 66 A.L.R. 2d 1086, 1126, supplementing 136 A.L.R. 965, 1004. For instance, no medical evidence was required to link plaintiff's soreness the next day and the six-inch bruise on her right hip with the incident on June 12th. Where, however, the subject matter — for example, a ruptured disc — is 'so far removed from the usual and ordinary experience of the average man

that expert knowledge is essential to the formation of an intelligent opinion, only an expert can competently give opinion evidence as to the cause of death, disease, or a physical condition.' *Ibid.*

"Where 'a layman can have no well-founded knowledge and can do no more than indulge in mere speculation (as to the cause of a physical condition), there is no proper foundation for a finding by the trier without expert medical testimony.' *Huskins v. Feldspar Corp.*, 241 N.C. 128, 84 S.E. 2d 645; *accord, Burton v. Holding & M. Lumber Co.*, 112 Vt. 17, 20 A. 2d 99, 135 A.L.R. 512; See *Hawkins v. McCain*, 239 N.C. 160, 79 S.E. 2d 493. The physical processes which produce a ruptured disc belong to the mysteries of medicine."

The assignments of error by each defendant in respect to the charge on the measure of damages is sustained.

Each defendant is entitled for errors in the charge to a

New trial.

MOORE, J., not sitting.

PLESS, J., took no part in the consideration or decision of this case.