1861

John R. HITE, Plaintiff v. ED SMITH LUMBER MILL, INC., Respondent v. TEMPLE-INLAND FOREST PRODUCTS CORPORATION, Appellant.

(420 S.E. (2d) 860)

Court of Appeals

*R.C. Thompson,* Diboll, Tex., and *Patrick J. Frawley,* of *Bouknight, Nicholson, Davis, Frawley & Anderson,* Lexington, *for appellant.*

*William P. Walker, Jr.,* of *Walker, Morgan & Manning,* Lexington, *for respondent.*

Heard March 17, 1992; Decided Aug. 10, 1992.

Reh. Den. Sept. 24, 1992.

BELL, Judge:

This is an action for damages arising from a contract for the sale of goods. John R. Hite filed suit against Ed Smith Lumber Mill, Inc., alleging breach of an implied warranty of fitness for a particular purpose in the sale of building insulation. Smith denied knowing the particular purpose for which the insulation was to be used and cross claimed against Temple-Inland Forest Products Corporation, the manufacturer of the insulation, alleging Temple breached its warranties of merchantability and fitness for a particular purpose. Temple denied the allegations. The jury returned a verdict in favor of Hite on his complaint and in favor of Smith on its cross claim. Temple appeals. We reverse.

In 1985, Hite sought bids on building materials for his chicken houses. Hite asked Smith for a bid on R-Max insulation. Hite told Smith the insulation would be used as exposed ceiling insulation in the top of the chicken houses. Smith advised Hite he could furnish insulation called TemPro which looked to him to be the same product at a cheaper price. Temple manufactures TemPro.

Hite purchased the TemPro insulation from Smith. The sale was made from Smith's existing inventory. A short time after the chicken houses were built, Hite noticed the foil barrier on the insulation began to peel off. He also noticed the vapor barrier coming loose and the foam core splitting and falling down. Hite filed suit against Smith because of the deteriorating insulation.

At trial, Smith took the position that if, in fact, the insulation was not suitable for use in the chicken houses, Temple breached an implied warranty of fitness for a particular purpose by failing to inform Smith that the insulation was not approved for exterior use.

South Carolina Code Ann. § 36-2-315 (1976) states:

> [w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . .

an implied warranty that the goods shall be fit for such purpose.

To prevail on his claim, Smith would have to prove that, at the time Temple sold him this particular insulation, Temple knew that he was purchasing the insulation for use in chicken houses and that Smith was depending on Temple's knowledge in selecting the proper insulation.

Smith presented no evidence to show Temple either knew of the sale of the insulation to Hite or knew of Hite's intended use of the insulation for chicken houses. There is no evidence showing Temple knew, at the time Temple sold to Smith, of any particular purpose for which Smith was purchasing the insulation he later sold to Hite. In fact, when Smith purchased the insulation from Temple, Hite had not yet dealt with him and he was not aware of Hite or his particular insulation needs. Smith purchased the insulation for his general inventory, not for any particular purpose. He sold the insulation to Hite out of his existing stock, not after specially ordering it from Temple. It would be logically impossible for Temple to have known of Hite's particular purpose at the time Temple sold to Smith. "Inferences of fact, like fullbacks on football teams, do not ordinarily run backward." *Winburn v. Insurance Co. of North America*, 287 S.C. 435, 440, 339 S.E. (2d) 142, 146 (Ct. App. 1985) (citing *Childress v. Nordman*, 238 N.C. 708, 78 S.E. (2d) 757 (1953)).

Temple contends it is not liable on an implied warranty of fitness for a particular purpose, because the contract of sale with Smith required him to restrict the sale of TemPro to the uses for which it was manufactured.

After a customer placed an order with its telemarketing representative, Temple would send the customer an acknowledgment form. The acknowledgment form stated the terms of the agreement were limited to the ones contained on the reverse side. It gave the customer two days to accept the terms. One term stated:

1.10 Buyer agrees to restrict sales of Temple products to the manufacturer's intended uses thereof and to inform consumers of product performance standards and recommended methods if installation.

Temple contends, as between merchants, this additional term became part of the contract under S.C. Code Ann. § 36-2-207(2) (1976). Temple asserts this term required Smith to restrict the sale of the insulation to Temple's intended uses and to inform Hite of the product performance and the recommended methods of installation. TemPro insulation was manufactured to be used as interior insulation, primarily in residences. It was not made to be used in exposed exterior areas.

Section 36-2-207(2) provides:

> [t]he additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
> (a) the offer expressly limits acceptance to the terms of the offer;
> (b) they materially alter it; or ·
> (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

Smith neither expressly limited Temple's acceptance to the terms of his offer, nor did he notify Temple of any objections to the additional terms. Thus, if the terms did not "materially alter" the agreement, they became a part of the bargain.

In this case, the additional terms did not "materially alter" the contract, because Temple would not have been liable to Smith for breach of an implied warranty even if the additional terms were not listed on the acknowledgment form. As previously stated, Temple had no knowledge of the use for which Smith purchased the insulation. Temple had no reason to know Smith was depending on its knowledge in selecting the insulation. The additional terms simply made it explicit that Temple was non accepting any liability for damages resulting from nonintended uses of the insulation. Thus, the trial judge erred in refusing to grant Temple's directed verdict and judgment notwithstanding the verdict motions.

Reversed.

CURETON, J., and LITTLEJOHN, Acting J., concur.