BEN LLOYD v. CARNATION COMPANY, GARY WILLIER, AND WARREN MANUEL

No. 8215SC391

(Filed 5 April 1983)

1. **Appeal and Error § 6; Rules of Civil Procedure § 41.1— voluntary dismissal of claims—no right to appeal summary judgment on one count**

    When plaintiff took a voluntary dismissal without prejudice of his claims against defendant on 21 January 1982, he destroyed his right to appeal an adverse ruling of 1 January 1981 allowing summary judgment on one count of the complaint.

2. **Appeal and Error § 14— voluntary dismissal against codefendant—question of earlier summary judgment against defendants**

    The question of the propriety of summary judgment entered in favor of defendants was before the appellate court where the trial court on 1 January 1981 allowed summary judgment for defendants on all claims against them, plaintiff excepted in open court to the entry of summary judgment, plaintiff took a voluntary dismissal without prejudice of his claims against a codefendant on 21 January 1982, and following entry of the voluntary dismissal, plaintiff gave notice of appeal in open court.

3. **Unfair Competition § 1— unfair trade practices—application of Virginia law**

    Summary judgment was properly entered in favor of defendants in plaintiff's action to recover damages for conspiracy to commit unfair trade practices by attempting to force plaintiff out of marketing territories in the sale of bull semen for a codefendant where the forecast of evidence and discovery established that the acts about which plaintiff complains were performed entirely within the State of Virginia, the substantive law of Virginia must therefore be applied to plaintiff's claim, and it appears that Virginia has not adopted an unfair or deceptive trade practices statute similar to G.S. 75-1.1.

4. **Contracts § 32— wrongful interference with contract rights—application of Virginia law—summary judgment under North Carolina law**

    Summary judgment was properly entered for defendants in plaintiff's action to recover damages for wrongful interference with plaintiff's contract rights to act as an exclusive territorial distributor of bull semen for a third party by inducing the third party to remove plaintiff from his marketing territory where the forecast of evidence and discovery established that the acts about which plaintiff complains were performed entirely within the State of Virginia, the law of Virginia must therefore be applied to plaintiff's claim, and no statute or case law of Virginia recognizes this purported cause of action. Even if the law of North Carolina were applicable, summary judgment was properly entered for defendants where the forecast of evidence showed that the decision to terminate plaintiff's distribution rights originated with the third party and not with the defendants.

    Judge BECTON concurring in the result.

APPEAL by plaintiff from *Brewer, Judge.* Order entered 1 January 1981 in Superior Court, ORANGE County. Heard in the Court of Appeals 17 February 1983.

*Powe, Porter and Alphin by Charles R. Holton and Edward L. Ball for plaintiff appellant.*

*Smith, Moore, Smith, Schell & Hunter by Jack Floyd, Frank J. Sizemore, III, and Jeri L. Whitfield for defendant appellees.*

BRASWELL, Judge.

The focal point of the facts concerns a verbal contract of 1967 vintage through which the plaintiff allegedly became an exclusive territorial distributor of bull semen for Carnation Company. It is crucial, given the history of the case, that we examine procedure before substance in our analysis.

When the complaint was filed on 18 April 1979, there were three defendants: Carnation Company, Gary Willier and Warren Manuel. The complaint contains seven counts for relief. The first five counts are designated as against defendant Carnation only: (1) Unfair Trade Practice, (2) Unlawful Price Maintenance, (3) Breach of Contract, (4) Unjust Enrichment, and (5) Fraud. Counts Six and Seven are against the defendants Willier and Manuel only. Count Six is for Conspiracy to Commit Unfair Trade Practices. Count Seven is for Unlawful Interference With Contractual Rights.

Defendants filed a joint Answer on 22 June 1979, which alleges eleven defenses and which was amended to include a twelfth defense on 19 December 1980. Defendants moved for summary judgment on all counts on 4 September 1979, and plaintiff filed cross-motion for partial summary judgment on 23 October 1980.

By order dated 1 January 1981, filed 12 January 1981, the trial judge having held evidentiary hearing, allowed defendants' motion for summary judgment on Counts Five, Six and Seven, but denied it as to Counts One, Two, Three, and Four. There was no appeal.

On 21 January 1982, the record shows that "Pursuant to Rule 41 of the North Carolina Rules of Civil Procedure, the plaintiff,

Ben Lloyd, hereby gives notice of voluntary dismissal without prejudice of his claims against Carnation Company." No mention is made of the defendants Willier or Manuel.

The record contains no formal notice of appeal or appeal entries. However, on page one of the record we find the following language: "Order entered January 1, 1981, dismissing counts 5, 6, and 7 of the Complaint from which Plaintiff excepted in open Court. Upon voluntary dismissal of the remaining Counts of the Complaint, Plaintiff gave Notice of Appeal in open Court to the North Carolina Court of Appeals." The record was certified by the Clerk of Superior Court on 20 April 1982.

In the plaintiff's grouping of exceptions and assignments of error the record shows but one assignment of error and one exception. The one assignment of error is designated as follows: "The Plaintiff assigns as error the Court's decision in its Order dated January 1, 1981, to allow the Defendant's Motion for Summary Judgment as to Counts 5, 6, and 7 of the Complaint; error is assigned on the basis that there are factual issues sufficient in said counts to be decided by a jury . . . ."

Upon this quagmire of conduct, basic procedural questions arise as to the defendant Carnation Company singly and as to defendants Willier and Manuel jointly. The problem will be discussed separately.

## I.

### PLAINTIFF'S APPEAL AS TO CARNATION COMPANY

[1] The act of plaintiff taking a voluntary dismissal without prejudice by filing a notice of dismissal at any time before the plaintiff rests his case is authorized by Rule 41(a)(1) of the Rules of Civil Procedure. Pursuant to that rule, on 21 January 1982, plaintiff gave "notice of voluntary dismissal without prejudice of *his claims* against Carnation Company" (emphasis added). Only then does plaintiff "appeal." By his assignment of error plaintiff now wants us to review the decision of the trial judge entered on 1 January 1981, more than one year prior to the dismissal, when summary judgment was granted on Count Five of the complaint in favor of Carnation Company.

We hold that when plaintiff took a voluntary dismissal without prejudice as to his claims against Carnation Company, he

destroyed his right to appeal the adverse ruling of 1 January 1981 allowing summary judgment on Count Five of the Complaint. There was nothing left on which to appeal after the voluntary dismissal.

Our research has led us to the case of *Pipeliners Local Union No. 798, Tulsa, Okl. v. Ellerd*, 503 F. 2d 1193 (10th Cir. 1974), which we choose to use for comparative purposes. The Tenth Circuit was confronted with the procedural situation wherein on 9 February 1972 the trial court had entered a formal order granting all defendants' motions to dismiss the Complaint for failure to state a claim upon which relief could be granted. The existence of a counterclaim kept the case alive. On 26 September 1973, the plaintiffs took an oral voluntary dismissal in open court of "all actions 'as to all parties with the exception of the parties to the counterclaim.'" *Id.* at 1199.

The decision of *Pipeliners, Id.* at 1200, declares: "It is significant, we believe, that appellants' (*i.e.*, the plaintiffs') supplemental memorandum on appeal refers to the dismissal order of September 26, 1973, as one 'voluntarily' agreed upon by plaintiffs-appellants. The voluntary dismissal constituted a bar to appellants' attack upon the Order of Dismissal of February 9, 1972." Of like import is 5 Moore's Federal Practice ¶ 41.02[6] at 41-43 (2d ed. 1982): "Where plaintiffs' notice of voluntary dismissal under Rule 41(a)(1) is not disturbed by the trial court or where plaintiff knowingly and willingly agrees to a stipulation of dismissal, he has no standing to appeal."

In his discussion of the effect of dismissal with and without prejudice, Moore, *Id.*, ¶ 41.05[2] at 41-76, states that "A dismissal without prejudice leaves the situation so far as procedures therein are concerned the same as though the suit had never been brought." This text is cited with approval in *Covey v. C.I.T. Corp.*, 71 F.R.D. 487, 489-90 (E.D. Okla. 1975). However, as provided in our Rule 41(a)(1) "a new action based on the same claim may be commenced within one year after such dismissal . . . ."

The case of *McGoff v. Rapone*, 78 F.R.D. 8 (E.D. Pa. 1978), discussed the dismissal procedures under federal practice. The court stated that a voluntary dismissal by stipulation "is not 'final' in the sense that, being without prejudice, the plaintiff is free to refile. Similarly, since it does not even require an order

. . . then by definition it cannot be an 'appealable' order, and in that technical sense it is 'nonfinal.' . . . However, . . . a Fed. R. Civ. P. 41(a)(1) dismissal is 'final' for purposes of a 60(b) motion [relief from judgment], which requires a 'final judgment, order or proceeding.' " *Id.* at 22.

Athough we have found no North Carolina case directly on point, we believe that the fundamental principles of law concerning standing to appeal in these federal citations are fully applicable to the factual situation before us. The appeal of the plaintiff against Carnation Company is dismissed.

## II.

### PLAINTIFF'S CLAIMS AGAINST DEFENDANTS WILLIER AND MANUEL

[2]  The only party-defendants in Counts Six and Seven of the complaint are Willier and Manuel. Plaintiff sought no relief against these defendants within any other Count or claim. Count Six alleges a Conspiracy to Commit Unfair Trade Practices. Count Seven alleges an Unlawful Interference With Contractual Rights. After a December 1980 evidentiary hearing on defendants' motion for summary judgment as to all claims, the trial judge entered an order dated 1 January 1981, filed 12 January 1981, dismissing Counts Five, Six and Seven in their entirety. To the entry of summary judgment plaintiff excepted in open court but did not appeal.

On 21 January 1982, plaintiff took a voluntary dismissal without prejudice of his claims against the defendant Carnation Company. No mention is made of the defendants Willier and Manuel. Following entry of the voluntary dismissal, plaintiff gave notice of appeal in open court. A full year passed between the granting of the motion for summary judgment and the giving of notice of appeal. There are no appeal entries in the record.

Immediately before the taking of the voluntary dismissal, the case was alive as to the four remaining counts against defendant Carnation Company. By brief and oral arguments the parties tell us that a jury trial of several days' duration was in progress in January 1982 as to Carnation Company, and that plaintiff's dismissal came before plaintiff rested his case. In open court after

the voluntary dismissal of Carnation, plaintiff gave his only notice of appeal.

Is the plaintiff "in court" as to the defendants Willier and Manuel? We answer yes and will examine the merits of the granting of summary judgment.

The losing party has no absolute right to appeal immediately from an interlocutory order. As to defendant Carnation Company, the summary judgment against it on Count Five was interlocutory in that the ruling disposed of fewer than all claims, and in that there was no certification by the judge as to substantial need for immediate review on appeal without delay. As to defendants Willier and Manuel, since plaintiff sought no relief against them except as pleaded in Counts Six and Seven, when these two counts were dismissed by summary judgment, the result was that all claims against Willier and Manuel were dismissed.

Plaintiff could have immediately appealed from this interlocutory order, considering that the ruling on summary judgment disposed of all parties and all claims, by virtue of the ruling being final as to all claims of the plaintiff as to each of these two defendants. Plaintiff could have had these two claims certified for appeal by the trial court under Rule 54(b) of the Rules of Civil Procedure. The exception to the court's ruling of 1 January 1981 kept alive the issue of the correctness of the trial judge's decision on summary judgment while the plaintiff proceeded with the case against Carnation Company. When during the trial and before resting its case plaintiff took a voluntary dismissal without prejudice as to Carnation Company, and thus terminated the case in the trial division (unless refiled within one year), and when plaintiff gave notice of appeal on 21 January 1982, this provided the plaintiff the first opportunity to appeal without the trial judge's certification under Rule 54(b). On 21 January 1982 the plaintiff gave notice of appeal within 10 days (*i.e.*, the same day) of a final judgment. Prior to 21 January 1982 there was no procedural occasion which made it mandatory for the plaintiff to exercise his otherwise interlocutory right of appeal.

By not exercising his procedural right to immediately appeal on 1 January 1981, plaintiff had to go on to trial as to one defendant only. He ran the risk, if successful on this appeal to have sum-

mary judgment reversed, of having to go to trial twice on similar subject matter claims. Plaintiff lost his right to have all three party-defendants tied together in one lawsuit.

If the voluntary dismissal of 21 January 1982 had included these two defendants, then we would have held against plaintiff on procedural grounds as in Part I of this opinion. Because these two defendants are not included in the voluntary dismissal, and because the plaintiff has minimally preserved for appeal the issue of summary judgment as to Willier and Manuel, we now turn to the merits of plaintiff's appeal.

A motion for summary judgment will be granted if the movant can show "by the use of pleadings, depositions, answers to interrogatories, admissions on file and affidavits that (1) there is no genuine issue as to any material fact, and (2) that [he] is entitled to judgment as a matter of law." *Bell v. Martin,* 299 N.C. 715, 718, 264 S.E. 2d 101, 103, *rehearing denied,* 300 N.C. 380 (1980); G.S. 1A-1, Rule 56(c). The burden is on the moving party to establish, positively and clearly, the absence of a triable issue of fact. *See Bank v. Gillespie,* 291 N.C. 303, 310, 230 S.E. 2d 375, 379 (1976). The movant can successfully carry this burden when he demonstrates the nonexistence of an essential element of the opponent's claim, or when he proves the nonexistence of evidence, through discovery, to supply an essential element of the stated claim. *Mortgage Co. v. Real Estate, Inc.,* 39 N.C. App. 1, 4, 249 S.E. 2d 727, 729 (1978), *affirmed,* 297 N.C. 696, 256 S.E. 2d 688 (1979). *Zimmerman v. Hogg & Allen,* 286 N.C. 24, 209 S.E. 2d 795, 76 A.L.R. 3d 1004 (1974).

The defendants were the moving parties for summary judgment. The plaintiff's one assignment of error is "that there are factual issues sufficient in said counts [*i.e.,* Six and Seven] to be decided by a jury."

[3] Count Six of the complaint alleges a conspiracy between Willier and Manuel with Carnation to commit unfair trade practices and force plaintiff out of the marketing territories of Virginia, North Carolina, and South Carolina in the purchase and sale of bull semen from Carnation by plaintiff. The unfair acts or practices were alleged to be as defined in G.S. 75-1.1(a), and the entire claim purports to be based on North Carolina law. However, the forecast of all the evidence and discovery

establishes that if the defendants did the acts and practices, the acts were done entirely within the State of Virginia.

The evidence shows that plaintiff has continued to sell bull semen in the States of North Carolina, South Carolina and also a small territory in Virginia. Plaintiff did not stop his general selling activities in Virginia until he had confirmed that the defendant Manuel was selling in Virginia. The last wrongful act upon which plaintiff relies for this claim took place in Virginia: the selling by Carnation of semen to Manuel in Virginia only. It is not disputed that all of plaintiff's meetings with Manuel took place in Virginia. All discussions between Manuel and Willier and plaintiff took place in Virginia. Of the three marketing states, Virginia is undisputedly the State covered by plaintiff's alleged contract with Carnation and in which Carnation allegedly has sold semen to a would-be competitor of plaintiff.

Under the principles of conflict of laws, the North Carolina trial and appellate courts must apply the substantive law of Virginia to Count Six. *See Shaw v. Lee,* 258 N.C. 609, 129 S.E. 2d 288 (1963); *Charnock v. Taylor,* 223 N.C. 360, 26 S.E. 2d 911, 148 A.L.R. 1126 (1943); and *Chewning v. Chewning,* 20 N.C. App. 283, 201 S.E. 2d 353 (1973). It appears to us that Virginia had not adopted an unfair or deceptive trade practices act comparable to our G.S. 75-1, *et seq., cf.* 4 Virginia Code § 18.2-499 and 18.2-500 (1982). Because Virginia has not adopted a similar statute, the plaintiff's allegations of wrongful acts and injuries committed in the State of Virginia which allegedly are based on the North Carolina statutes are of no avail. The North Carolina statute cannot be constitutionally applied in Virginia. *See Home Ins. Co. v. Dick,* 281 U.S. 397, 74 L.Ed. 926, 50 S.Ct. 338, 74 A.L.R. 701 (1930).

We hold that the trial court was correct in dismissing Count Six and in granting summary judgment on this count for defendants Willier and Manuel.

[4]   As to Count Seven, plaintiff alleges that defendants Willier and Manuel unlawfully interfered with plaintiff's contract rights with defendant Carnation Company and induced Carnation to remove plaintiff from his marketing territory. For the same reasons as discussed in our consideration of Count Six, we hold that the law of the State of Virginia applies to Count Seven. We are unaware of any statute or case law of Virginia which

recognizes this purported cause of action. Thus, summary judgment on Count Seven was properly granted by the trial judge.

Even if it were argued that North Carolina law should be applied, our law does not rescue the plaintiff. Upon a further review of the facts, all of the evidence shows that it was Carnation who first contacted Manuel. Manuel in turn unsuccessfully negotiated with plaintiff and went his own way in Virginia until once again Carnation contacted him. Manuel pursued his own personal business interest with the plaintiff in a contact he did not originate. The forecast of the evidence does not establish any inducement by Manuel of Carnation to do anything against the plaintiff.

The complaint alleges that Willier and Manuel had once been employees of American Breeders Service and that Willier and Manuel were close personal friends. Willier introduced Manuel to plaintiff. According to the complaint, in 1977 it was "stated by Willier in the presence of the Plaintiff and Manuel that any new marketing arrangements for the State of Virginia would have to be done under the authority and with the consent of the Plaintiff." The defendant Carnation Company on 19 January 1978 terminated "all distribution arrangements with [plaintiff] because of 'unsatisfactory sales.'"

The undisputed facts show that any oral or written agreements which plaintiff had with Carnation were terminated in writing by Carnation on 19 January 1978. The forecast of the evidence shows that this decision originated with Carnation and not with the defendants Willier or Manuel. In addition, Carnation continued to sell to plaintiff in spite of the termination of all contracts. Willier, at most, was attempting to be helpful to both Manuel and plaintiff, to help each of them in their own prospective business adventures, which never worked out and which died aborning.

Regardless of whether it is the law of Virginia or North Carolina that should be applied, plaintiff loses on yet another defect. Count Seven of the complaint is fatally defective for failure to allege that plaintiff's contract with Carnation would have been continued *but for* the acts and practices of Manuel and Willier; and plaintiff failed to allege any facts to support his conclusion that Manuel and Willier acted maliciously. Even assuming

Lloyd v. Carnation Co.

these two allegations were in the complaint, there is in the record no forecast of evidence to support an inference that Carnation would have renewed the contract with plaintiff after his record of poor sales or any evidence that any defendant acted maliciously.

We hold that the trial judge correctly allowed summary judgment on Count Seven.

We hold that the entry of summary judgment in favor of defendants Willier and Manuel was proper; and that the voluntary dismissal without prejudice as to defendant Carnation Company precludes us from any consideration of plaintiff's subsequent appeal of the prior granting of summary judgment in favor of Carnation Company.

Assuming arguendo that the plaintiff has preserved his right to appeal after the taking of the voluntary dismissal as to Carnation Company, and assuming it is proper to reach the merits as to Count Five of the complaint, then we would hold that summary judgment was properly granted to Carnation Company.

Affirmed.

Judge HEDRICK concurs.

Judge BECTON concurs in the result.

Judge BECTON concurring in the result.

I fully concur in this Court's resolution of plaintiff's claims against defendants Willier and Manuel. I do not believe, however, that plaintiff "destroyed his right to appeal" the trial court's summary judgment order dismissing plaintiff's fraud claim against Carnation. I, nevertheless, concur in the result reached by this Court since, in my view, the trial court properly granted summary judgment for defendant Carnation.

I

Considering the record before us, plaintiff could not have immediately appealed from the 12 January 1981 order granting Carnation's motion for summary judgment on the fraud count. That order adjudicated fewer than all of the claims and did not terminate the action. It was interlocutory and not immediately appealable. N.C. Gen. Stat. § 1A-1, Rule 54(b) (1969). When plaintiff went to trial approximately one year later on the remaining four

counts, his attorney apparently decided, either because things were not going well on those counts or for other tactical reasons, to take a voluntary dismissal pursuant to N.C. Gen. Stat. § 1A-1, Rule 41 (1969) as to those four counts in an effort to make count five, dismissed a year earlier, immediately appealable since it contained the only remaining claim. The practical effect of plaintiff's voluntary dismissal was to render the 1981 partial summary judgment a full summary judgment, leaving nothing else to be determined in the case. The 1981 order granting summary judgment on the fraud count is therefore appealable under N.C. Gen. Stat. § 7A-27(b) (1981).

I am aware that the record shows that plaintiff gave notice of voluntary dismissal pursuant to Rule 41 of the North Carolina Rules of Civil Procedure "without prejudice of his claims against Carnation Company." Considering the facts that the Rule 41 voluntary dismissal was taken during the course of the 1982 trial on the four remaining counts, and considering further the following entry on page 1 of the Record, which was certified by the Clerk of Superior Court, plaintiff was clearly not taking a voluntary dismissal on the fraud count, which the court had already dismissed by way of summary judgment in 1981:

> Order entered January 1, 1981, dismissing counts five, six, and seven of the Complaint from which plaintiff excepted in open court. Upon voluntary dismissal of the remaining counts of the Complaint, plaintiff gave Notice of Appeal in open Court to the North Carolina Court of Appeals.

*Pipeliner Local Union No. 798 v. Ellerd*, 503 F. 2d 1193 (10th Cir. 1974) is therefore inapposite.[1]

If plaintiff had not taken a voluntary dismissal in 1982, he could have, within ten days following a judgment on the remain-

---

1. In *Pipeliner*, the plaintiff's Complaint was dismissed for failure to state a claim. At a subsequent trial on one of the defendant's counterclaim, plaintiff "did, in open court, explicitly and unqualifiedly stipulate that *all actions* 'as to all parties with the exception of the parties to the counterclaim' were dismissed *with prejudice*, each party to pay his own costs." (Emphasis added.) Plaintiff later tried to appeal the earlier order of dismissal for failure to state a claim, and the *Pipeliners* Court said, "Appellants cannot now be heard on their contention that the Trial Court erred in entering its order . . . dismissing Union's Complaint on the ground that it 'does not state a claim . . . upon which relief can be granted' in light of their subsequent voluntary dismissal of their respective complaints and causes of action."

ing four counts, appealed the 1981 summary judgment order dismissing count five of his Complaint. Plaintiff's action disposing of the remaining four counts by a Rule 41 voluntary dismissal is not qualitatively different from the trial court's disposition of those four counts as it affects the appealability of count five. To hold otherwise would give plaintiff an inchoate right of appeal only—a right without a remedy on the facts of this case. Procedurally, then, I agree with plaintiff. Plaintiff did not, by taking a Rule 41 voluntary dismissal, destroy his right to appeal.

## II

With regard to the substance of his claim, plaintiff contends that Carnation, in 1968 through 1970, misrepresented its intent not to establish any other semen distributors in Virginia. The trial court correctly concluded, however, that the essential elements of fraud did not exist.

> The essential elements of actionable fraud are as follows: (1) material misrepresentation of a past or existing fact; (2) the representation must be definite and specific; (3) made with knowledge of its falsity or in culpable ignorance of its truth; (4) that the misrepresentation was made with intention that it should be acted upon; (5) that the recipient of the misrepresentation reasonably relied upon it and acted upon it; and (6) that there resulted in [sic] damage to the injured party. [Citations omitted.]

*Rosenthal v. Perkins*, 42 N.C. App. 449, 451-52, 257 S.E. 2d 63, 65 (1979). Further, "[a]s a general rule, a mere promissory representation will not be sufficient to support an action for fraud. [Citations omitted.] A promissory misrepresentation may constitute actionable fraud when it is made with intent to deceive the promisee, and the promisor, at the time of making it, has no intent to comply." [Citations omitted.] *Johnson v. Insurance Co.*, 300 N.C. 247, 255, 266 S.E. 2d 610, 616 (1980).

Even assuming that Carnation told plaintiff that plaintiff would be granted an exclusive distributorship in Virginia, the representation regarding future conditions and facts cannot form the basis for an action in fraud. In order for a misrepresentation to constitute the basis for fraud, it must be shown that the representation was untrue at the time it was made or at the time

it was acted upon. *Childress v. Nordman*, 238 N.C. 708, 78 S.E. 2d 757 (1953).

Simply put, I find no genuine issue as to any material fact with regard to plaintiff's contentions under count five. The trial court therefore properly granted summary judgment to defendant Carnation, and I vote to affirm on this basis.