UNITED VIRGINIA BANK v. AIR-LIFT ASSOCIATES, INC.; JOHN T. HOFF-
MAN; JOHN GOOGE; ARNOL BOWLING, EXECUTRIX OF THE ESTATE OF
DOSSITT R. BOWLING; AND HENRY P. PRAMOV, JR.

No. 8510SC271

(Filed 4 February 1986)

1. **Unfair Competition § 1— unfair trade practices statute—applicable to UCC
transactions**

The unfair trade practices statute, N.C.G.S. 75-1.1, is applicable to com-
mercial transactions also covered by the Uniform Commercial Code.

2. **Courts § 21.13— unfair trade practice—what law governs**

The law of the state where the last act occurred giving rise to defendants'
injury governs defendants' action for an unfair trade practice under N.C.G.S.
75-1.1.

3. **Courts § 21; Unfair Competition § 1— unfair trade practice—applicability of
Virginia law—dismissal of claim**

Where the counterclaim of defendant debtors alleged that plaintiff
creditors committed an unfair trade practice by representing to defendants
that they had a buyer who would pay $150,000 for an airplane which was
security for a promissory note upon delivery to Norfolk, Virginia, and that the
plane was sold in Richmond, Virginia for only $55,000, the last act giving rise
to defendants' counterclaim occurred in Virginia, and the substantive law of
Virginia applied to the counterclaim. Because no statutory basis can be found
in Virginia law to support an unfair trade practice claim, the counterclaim
must be dismissed.

4. **Courts § 21.5— breach of fiduciary duty—what law governs**

Defendants' counterclaim for breach of fiduciary duty was governed by
the law of Virginia where the last act giving rise to the claim, the sale of an
airplane, occurred in Virginia.

5. **Fiduciaries § 1— debtor-creditor relationship—no fiduciary duty**

The existence of a debtor-creditor relationship between plaintiff bank and
defendants did not create a fiduciary relationship, and the trial court properly
dismissed defendants' counterclaim for breach of fiduciary duty by plaintiff
bank in the sale of the collateral for a promissory note upon default by defend-
ants.

APPEAL by defendants from *Preston, Judge.* Judgment en-
tered 18 December 1984 in Superior Court, WAKE County. Heard
in the Court of Appeals 16 October 1985.

*Attorney General Lacy Thornburg by Special Deputy Attorney General James C. Gulick and Assistant Attorney General John F. Maddrey, amicus curiae.*

*Hunton & Williams by Edgar M. Roach, Jr., Stephani W. Humrickhouse and Thomas A. Knoth for plaintiff appellee.*

*Barringer, Allen and Pinnix by Noel L. Allen, William D. Harazin and Miriam J. Baer for defendant appellants.*

COZORT, Judge.

Plaintiff brought this action seeking a deficiency judgment against defendants on a promissory note executed by defendant Air-Lift Associates, Inc., and guaranteed by the individual defendants. Defendants counterclaimed alleging unfair trade practices and breach of fiduciary duty. The plaintiff filed for a partial judgment on the pleadings seeking dismissal of defendants' counterclaims. The trial court granted the plaintiff's motion. The defendants appealed. We affirm the trial court's dismissal of the counterclaims.

On 27 August 1980, plaintiff United Virginia Bank, a Virginia corporation (hereinafter called "UVB"), entered into an aircraft security agreement and promissory note with defendant Air-Lift, a Virginia corporation. In exchange for UVB's agreement to lend defendant Air-Lift $150,000.00 for the purchase of a 1974 Piper aircraft, the defendant Air-Lift granted plaintiff a security interest in the aircraft. Defendants Hoffman, Googe, Pramov, and Bowling, who is now deceased, guaranteed payment of the promissory note by the corporate defendant.

The bank refinanced the obligation in 1981 with Air-Lift executing a second promissory note and security agreement on 30 June 1981 to reschedule the payment of the $137,000.00 debt still owing from Air-Lift to plaintiff. Air-Lift made the required payments through March of 1982 and then stopped making payments. In September of 1982, UVB filed a claim and delivery action against defendants. The defendants agreed to voluntarily allow UVB to take possession of the airplane, and UVB dropped the claim and delivery action. Defendant Googe offered to pay $100,000.00 for the aircraft, but UVB refused to sell the plane to Googe because he was a guarantor. UVB had the plane flown

from the Raleigh-Durham Airport in North Carolina to an airport in Richmond, Virginia, where it was sold at a public sale for $55,000.00.

On 22 December 1982, UVB brought this action against defendants, jointly and severally, for an alleged deficiency of $93,634.99 owing to UVB after the public sale of the aircraft. Defendants answered the complaint denying liability and brought three counterclaims against plaintiff. Plaintiff replied to the counterclaims. One counterclaim was voluntarily dismissed by the defendants, leaving a claim pursuant to G.S. 75-1.1 alleging unfair and deceptive trade practices and one alleging breach of fiduciary duty. The defendants' counterclaim under G.S. 75-1.1 alleges that UVB's refusal to sell the aircraft to defendant Googe, UVB's inducements to gain possession of the aircraft, and its commercially unreasonable sale of the aircraft and other wrongful acts constituted unfair and deceptive acts or practices. The breach of fiduciary duty claim asserted that the refusal to sell the aircraft to defendant Googe and its subsequent sale constituted "UVB's breach of its fiduciary duty to the Defendants as their attorneys-in-fact." On 9 October 1984, UVB moved for partial judgment on the pleadings with regard to defendants' two remaining counterclaims. After hearing arguments on plaintiff UVB's motion on 14 November 1984, the trial court entered an order dated 18 December 1984 granting plaintiff's motion and dismissing both defendants' counterclaim alleging unfair trade practices and defendants' counterclaim alleging breach of fiduciary duty. In the 18 December Order the trial court made findings of fact and conclusions of law, including the following conclusions of law.

1. The Commonwealth of Virginia has the most significant relationship to the dispute between the parties, and therefore Virginia law controls. [Citations omitted.]

2. The last event necessary to render Plaintiff United Virginia Bank liable under Defendants' Counterclaim for unfair trade practices, the consummation of the public sale, occurred in Virginia, and therefore Virginia law controls. [Citations omitted.]

3. The contractual relationship between the parties was created and was centered in Virginia, and therefore Virginia law controls. [Citation omitted.]

4. Chapter 75 of the North Carolina General Statutes has no application to Virginia transactions and Defendants' Counterclaim brought pursuant to N.C. Gen. Stat. Secs. 75-1.1 and 75-16 should accordingly be dismissed. [Citation omitted.]

5. N.C. Gen. Stat. Secs. 75-1.1 and 75-16 are punitive in nature. [Citation omitted.]

6. The language of N.C. Gen. Stat. Sec. 75-1.1 is so vague that men of common intelligence must guess as to its meaning and differ as to its application, and the language is not sufficiently definite to give notice of the required conduct to one who would avoid its penalties. [Citations omitted.]

7. Unlike section 5 of the Federal Trade Commission Act, 15 USC Sec. 45, upon which the North Carolina statute is modeled, N.C. Gen. Stat. Sec. 75-1.1 imposes a punitive remedy of treble damages without providing procedures for adequate notice or hearing. [Citation omitted.]

8. No federal or North Carolina judicial interpretations or administrative guidelines concerning N.C. Gen. Stat. Sec. 75-1.1 or similar federal statutes exist which would have given United Virginia Bank or other potential offenders adequate notice of what constitutes a violation of N.C. Gen. Stat. Sec. 75-1.1. [Citations omitted.]

9. N.C. Gen. Stat. Sec. 75-1.1 imposes a punitive remedy of treble damages without adequate notice and hearing, without adequate procedures for obtaining notice, and without adequate judicial interpretation or administrative guidelines prior to imposition of the penalty, and therefore deprives an alleged offender of due process of law in violation of the Fourteenth Amendment of the United States Constitution and Article I, Sec. 19 of the Constitution of North Carolina. Accordingly, Defendants' Counterclaim for unfair trade practices should be dismissed. [Citations omitted.]

10. Application of Sec. 75-1.1 in this action would deprive United Virginia Bank of due process of law in violation of the Fourteenth Amendment of the United States Constitution and Article I, Sec. 19 of the Constitution of North Carolina, and the Defendants' Counterclaim for unfair trade practices should be dismissed. [Citations omitted.]

11. No fiduciary duty exists between a creditor and a debtor, or a creditor and a guarantor, and therefore Defendants' Counterclaim for breach of fiduciary duty should be dismissed. [Citation omitted.]

It is from this Order defendants have appealed.

Defendants argue three assignments of error on appeal: (1) that the trial court erred in finding that Virginia law controls defendants' counterclaim pursuant to G.S. 75-1.1; (2) that the trial court erred in finding that G.S. 75-1.1 is unconstitutional because it deprives the offender of due process; and (3) the trial court erred in finding no fiduciary duty existed, as a matter of law, between plaintiff and defendants.

First, we note that this appeal is interlocutory because it does not resolve all claims against all parties, and the trial court made no determination authorizing immediate appeal under Rule 54(b) of the Rules of Civil Procedure. We treat the appeal as a petition for a writ of certiorari and allow the writ in order to dispose of the issues presented on their merits. *Stone v. Martin*, 53 N.C. App. 600, 602, 281 S.E. 2d 402, 403 (1981).

[1] The initial question for our determination is whether Virginia or North Carolina law applies to defendants' counterclaim and more particularly what choice of law standard applies to the defendants' counterclaim brought under G.S. 75-1.1. Plaintiff argues that the provisions of Chapter 25 of the North Carolina General Statutes, the Uniform Commercial Code (hereinafter "U.C.C."), are exclusive and prevent the application of G.S. 75-1.1 to any conduct regulated by the U.C.C. Because both the U.C.C. and G.S. 75-1.1 have their own choice of laws provision, we must first determine whether the provisions of the U.C.C. are, in fact, exclusive so as to prevent application of Sec. 75-1.1 to any transaction covered by the U.C.C.

A review of the purposes of the U.C.C. and G.S. 75-1.1 clearly reveals that the provisions of the U.C.C. are not exclusive and do not preclude an action for unfair and deceptive trade practices. The purpose of the U.C.C. is to simplify, clarify and modernize the law governing commercial transactions. G.S. 25-1-102. The U.C.C. was not specifically designed to regulate the alleged unethical conduct or oppressive practices of banks. The purpose

of G.S. 75-1.1 is to provide a civil means to maintain ethical standards of dealings between persons engaged in business and the consuming public within this State and applies to dealings between buyers and sellers at all levels of commerce. *Buie v. Daniel International*, 56 N.C. App. 445, 448, 289 S.E. 2d 118, 119, *cert. denied*, 305 N.C. 759, 292 S.E. 2d 574 (1982). G.S. 75, *et seq.*, was enacted because other legal remedies were inadequate or ineffective. *Id.* Thus, an action for unfair and deceptive trade practices is a distinct action separate from fraud, breach of contract, and breach of warranty.

If we were to find, as the plaintiff argues, that the U.C.C. is the exclusive regulator of commercial transactions, Chapter 75 would be eviscerated. Almost all commercial transactions, including sales to consumers of commercial goods, would be protected from the regulation of Chapter 75. Such a result was certainly not in the minds of the Legislature when it enacted Chapter 75. We hold that Chapter 75 is applicable to commercial transactions which are also regulated by the U.C.C.

This Court has reached a similar result in regard to the regulation of the insurance industry. *Phillips v. Integon Corp.*, 70 N.C. App. 440, 319 S.E. 2d 673 (1984). In *Phillips*, the defendant contended that insurance regulation by Chapter 58 was exclusive; and, therefore, an action under Chapter 75 was precluded. This Court noted that the purpose behind Chapter 58 was to regulate insurance rates and Chapter 58 was not designed to regulate immoral, unethical or oppressive behavior on the part of insurance companies. *Id.* This Court held that Chapter 58 was not exclusive; therefore, an action could be brought under Chapter 75. *Id.*

Having determined that the defendants' counterclaim under G.S. 75-1.1 is not precluded by the regulations of the U.C.C., we now apply the conflict of law standard of Sec. 75-1.1 as recently set forth in *Lloyd v. Carnation*, 61 N.C. App. 381, 388, 301 S.E. 2d 414, 418 (1983), and interpreted in *ITCO Corp. v. Michelin Tire Corp.*, 722 F. 2d 42, 49-50, n. 11 (4th Cir. 1983), *cert. denied*, 473 U.S. ---, 84 L.Ed. 2d 337, 105 S.Ct. 1191 (1985), to decide whether Virginia or North Carolina law applies to this case. Although not binding, the Fourth Circuit Court of Appeals' analysis of *Lloyd* is persuasive:

We are satisfied that North Carolina's courts would apply N.C. Gen. Stat. 75-1.1 to the facts presented here without regard to the presence of the contractual choice of law provision. The nature of the liability allegedly to be imposed by the statute is *ex delicto*, not *ex contractu.* . . .

The contractual provision thus set aside, we are left with the recent decision of *Lloyd v. Carnation Co.*, 61 N.C. App. 381, 387, 301 S.E. 2d 414, 418 (1983), wherein the North Carolina Court of Appeals indicated that the law of the state where the injuries are sustained should govern. In *Lloyd*, plaintiff's claim under Sec. 75-1.1 was denied on choice of law grounds, the court holding that Virginia law should apply. The court cited for that proposition the case of *Shaw v. Lee*, 258 N.C. 609, 129 S.E. 2d 288 (1963), wherein it was observed that "claimant's right to recover and the amount which may be recovered for personal injuries must be determined by the law of the state where the injuries were sustained; if no right of action exists there, the injured party has none which can be enforced elsewhere."

*ITCO, supra*, at 50, n. 11.

[2, 3]   G.S. 75-1.1 is separate and distinct from any contractual relationship between plaintiff and defendants. The law of the State where the last act occurred giving rise to defendants' injury governs defendants' Sec. 75-1.1 action. *Lloyd v. Carnation, supra*, at 388, 301 S.E. 2d at 418. In substance the defendants argue that the plaintiff committed an unfair trade practice by representing to the defendants that they had a buyer who would pay $150,000.00 for the plane upon delivery to Norfolk, Virginia. The plane was sold in Richmond, Virginia, for the sum of $55,000.00, not $150,000.00. Taking the defendants' pleadings as true, we find that the last act giving rise to the defendants' claim under G.S. 75-1.1 occurred in Virginia. The defendants suffered no actionable injury until the plane was sold below the promised price. Because the last act occurred in Virginia, the substantive law of Virginia applies to defendants' counterclaim.

It appears from our research that Virginia has not adopted an unfair or deceptive trade practices act comparable to G.S. 75-1.1, *et seq.*, *cf.* 9 Va. Code Sec. 59.1-196, *et seq.* Because a statutory basis for defendants' injury cannot be found in Virginia

law, the defendants' claim must fail. *Id.*; *Home Ins. Co. v. Dick*, 281 U.S. 397, 74 L.Ed 926, 50 S.Ct. 338 (1930). We find that the trial court correctly dismissed defendants' counterclaim which alleged an unfair trade practice.

We note that other cases have applied the "most significant relationship" test to determine what State's law governs an action based on G.S. 75-1.1. *See Andrew Jackson Sales v. Bi-Lo Stores, Inc.*, 68 N.C. App. 222, 314 S.E. 2d 797 (1984); *Michael v. Greene*, 63 N.C. App. 713, 306 S.E. 2d 144 (1983). We find that the better rule is the "where the injuries are sustained" standard set forth by Judge Braswell in *Lloyd, supra.* However, even if we applied the "most significant relationship" test to this case, the result would be the same.

[4] Defendants also assign error to the trial court's dismissal of defendants' counterclaim for breach of fiduciary duty. The trial court found as a matter of law that no fiduciary relationship existed between plaintiff and defendants. Applying conflict of law principles, we find that the last act giving rise to the alleged breach of fiduciary relationship, the sale of the plane, occurred in Virginia; and we thus hold that Virginia law applies to defendants' counterclaim for breach of fiduciary duty.

[5] A fiduciary relationship exists " 'when special confidence has been reposed in one who in equity and good conscience is bound to act in good faith and with due regard for the interests of the one reposing the confidence.' " *Allen Realty Corp. v. Holbert*, 227 Va. 441, 446, 318 S.E. 2d 592, 595 (1984), *quoting H-B Partnership v. Wimmer*, 220 Va. 176, 179, 257 S.E. 2d 770, 773 (1979). Defendants' counterclaim reveals only a debtor-creditor relationship between the parties. The plaintiff held a security interest in the defendants' plane and was entitled to possession of the plane upon default on the promissory note. Our research reveals no Virginia cases directly on this point; however, applying the existing Virginia law to this case as we think the Virginia courts would, we find, taking all the defendants' allegations as true, that no fiduciary duty existed between plaintiff and defendants. UVB, the creditor, owed no special duties to the defendants beyond those contained in the parties' contractual agreement and defined by the U.C.C. The mere existence of a debtor-creditor relationship between UVB and defendants did not create a fiduciary relationship.

The defendants contend that plaintiff was acting as an "attorney in fact" because the defendants were induced to relinquish the plane by plaintiff's representations that a buyer existed for the plane. First, we note that under its contractual agreement UVB was entitled to possession of the aircraft upon default on the promissory note; and, second, defendants' counterclaim reveals that defendants voluntarily relinquished the plane after the plaintiff dismissed its claim and delivery action. Thus, the defendants' pleadings show that it relinquished the plane as a *quid pro quo* for the dismissal of UVB's claim and delivery action. As a matter of law no fiduciary duty existed and the trial court properly dismissed defendants' counterclaim.

While we affirm the trial court's decision to grant plaintiff's motion for judgment on the pleadings as to defendants' counterclaims, we find it necessary to discuss that portion of the trial court's order purporting to make findings of fact and conclusions of law holding G.S. 75-1.1 to be unconstitutional because of vagueness and inadequate notice and hearing procedures. The trial court's ruling came pursuant to plaintiff's motion for judgment on the pleadings under Rule 12(c) of the Rules of Civil Procedure. G.S. 1A-1, Rule 12. "The court is not required to find facts in a judgment on the pleadings since the facts determining disposition are those alleged in the pleadings . . . ." *J. F. Wilkerson Contracting Co. v. Rowland*, 29 N.C. App. 722, 725, 225 S.E. 2d 840, 842, *cert. denied*, 290 N.C. 660, 228 S.E. 2d 452 (1976). In other instances where findings of fact or conclusions of law are not required, they are disregarded on appeal. "[W]e note that either on a motion to dismiss or a motion for summary judgment, it is not necessary or required for the trial court to enter conclusions of law, and that if such are entered, they are disregarded on appeal." *City of Charlotte v. Little-McMahan Properties, Inc.*, 52 N.C. App. 464, 469, 279 S.E. 2d 104, 108 (1981). This rule is especially appropriate in the instant case because it was unnecessary for the trial court or this Court to reach the issue of the constitutionality of G.S. 75-1.1 because the case was decided on Virginia law. Therefore, we modify the trial court's order by striking its findings of fact and conclusions of law as surplusage and of no legal effect.

Modified and affirmed.

Judges WHICHARD and EAGLES concur.