RALPH N. COLVARD v. HERBERT FRANCIS, FIRST-CITIZENS BANK & TRUST COMPANY AND PAUL REEVES

No. 9123SC586

(Filed 19 May 1992)

1. **Conspiracy § 12 (NCI4th) — civil conspiracy by auctioneer — sale of land — summary judgment for defendant**

Summary judgment was properly granted for defendant Paul Reeves in a civil conspiracy action arising from the sale of an entire tract of land, rather than an auction of lots, where plaintiff contended that the best evidence of Paul Reeves' participation in the conspiracy was his solicitation and receipt of bids for the entire tract of 180 acres when the contract for sale set the acreage at 30 to 100 acres. Though the solicitation of bids on the entire tract may have been beyond the scope of his contractual authority and to his personal benefit, it does not show an overt act necessary to prove participation in a conspiracy. Reviewing bids for the entire tract also does not reflect a conspiracy.

**Am Jur 2d, Conspiracy § 51.**

2. **Conspiracy § 12 (NCI4th) — civil conspiracy by banker — sale of land — summary judgment for defendant proper**

The trial court did not err by granting summary judgment for a banker in a civil conspiracy action arising from the sale

COLVARD v. FRANCIS

[106 N.C. App. 277 (1992)]

of land where the evidence asserted against the banker concerned his professional and social position, but a man's community standing, professional position, or financial status does not reflect membership in a conspiracy, and there was no overt act which evidences a conspiracy.

**Am Jur 2d, Conspiracy § 51.**

3. **Unfair Competition § 1 (NCI3d) — sale of land — auctioneer — summary judgment for defendant**

The trial court did not err by granting summary judgment for defendant auctioneer on an unfair practices claim arising from the sale of land where plaintiff claimed that the auctioneer's unfair and deceptive act was the soliciting and receiving of bids on the entire 180-acre tract when the auction contract was for a maximum of 100 acres. The auctioneer had a fiduciary duty to his client to obtain the best price for the land and the sale of the entire tract brought the highest price per acre. As it met his fiduciary obligation to obtain the highest price for plaintiff's land, the auctioneer did not commit an unfair or deceptive act by either accepting the bid for the entire tract or by recommending the sale of the entire tract at that price.

**Am Jur 2d, Monoplies, Restraints of Trade, and Unfair Trade Practices § 696.**

4. **Unfair Competition § 1 (NCI3d) — sale of land — failure to make loan — summary judgment for defendant**

The trial court did not err by granting summary judgment for defendants Bank and Francis, the banker, on an unfair practices claim for promising a loan for $235,000 and then failing to make the loan. Francis promised to loan $100,000 and kept that promise. Plaintiff does not allege an overt act by the Bank, such as was found in *Pedwell v. First Union Nat. Bank of North Carolina*, 51 N.C. App. 236. The fact that Francis received phone calls regarding the loans to plaintiff, without anything further, does not show an unfair or deceptive act on the part of Francis or the Bank.

**Am Jur 2d, Banks § 683.**

COLVARD v. FRANCIS

[106 N.C. App. 277 (1992)]

APPEAL by plaintiff from an order filed 11 March 1991 by *Judge Thomas W. Ross* in WILKES County Superior Court. Heard in the Court of Appeals on 9 April 1992.

*Franklin Smith for plaintiff-appellant.*

*Ward & Smith, by Kenneth R. Wooten and Leigh A. Allred, for defendants-appellees First-Citizens Bank & Trust Company.*

*Patrick, Harper & Dixon, by Eloise D. Bradshaw, for defendant-appellee Herbert Francis.*

*Di Santi, Watson & McGee, by Anthony S. di Santi, for defendant-appellee Paul Reeves.*

LEWIS, Judge.

Plaintiff Ralph Colvard inherited, along with his two sisters, several tracts of land from his parents. A family settlement agreement was signed whereby each sibling agreed to pay a percentage of the mortgage and estate taxes. At 56 percent, plaintiff's portion of the debts was approximately $400,000.00. In order to raise this amount, plaintiff divided one of the inherited tracts into lots. Plaintiff contracted with defendant Paul Reeves, a certified Independent Fee Appraiser, a licensed real estate broker and auctioneer, to sell these lots at auction. The May 1986 sale of this land and the family home place brought approximately $290,000.00; defendant Reeves' fee was 10 percent. On 19 May 1986, plaintiff again contracted with Paul Reeves to sell from 30 to 100 acres of a 180 acre tract of the family farm; defendant Reeves' fee was again 10 percent. The land was divided into lots and roads were graded and graveled. The sale was set for 21 June 1986.

One week prior to the sale, plaintiff contacted defendant Herbert Francis, a Senior Vice President of defendant First-Citizens Bank and Trust Company (Bank) in West Jefferson and took him out to evaluate the 180 acre tract as collateral for a loan. Plaintiff explained that he would need a loan of $235,000.00 in case the 21 June 1986 sale did not bring enough money to cover his portion of the estate debts. Mr. Francis informed plaintiff that his lending limit was $100,000.00 and that the rest of the loan would have to be approved by the Hickory office. Mr. Francis assured plaintiff that this loan would not be a problem. Mr. Francis contends he told plaintiff that the additional loan amount would require a signed

loan application, financial statement, and a repayment plan. Plaintiff gave Mr. Francis a phone number where he could be reached, 24 hours a day, should a problem with the loan occur. During this one week interval, neither party contacted the other about the loan.

On the night prior to the sale, Mr. Francis alleges that an unidentified man phoned to tell him that plaintiff claimed to have unlimited credit from the Bank. Mr. Francis informed the caller that the agreed amount of the loan was only $100,000.00. The next morning, the day of the auction, Mr. Francis states he received another inquiry regarding this loan, this time from Mr. Ritz Ray, director of the Bank's West Jefferson branch, in which Mr. Ray posed the question, "Do you have to make that loan?" Later that morning, Mr. Francis went to plaintiff's farm to make sure plaintiff understood that the loan was only for $100,000.00. He found plaintiff, the auctioneer and the executor of the estate, in a mobile home. Plaintiff claims that these parties coerced him into selling his land for less than its fair market value. The statements of coercive force are as follows: the executor told him that the bank required the estate debts to be paid on the Monday following the auction, Mr. Francis told him that he could not get the $235,000.00 loan, and Paul Reeves presented a $600,000.00 offer for the entire 180 acre tract which the auctioneer represented as a good offer. Under pressure from these parties, plaintiff agreed to take the offer and to sell the entire 180 acre tract for $600,000.00 to a Mr. J.C. Faw. Plaintiff alleges that he had rejected several offers for the entire tract and as late as the day prior to the auction, plaintiff claims that he had refused to sell the 180 acre tract for $600,000.00.

On 26 June 1986, plaintiff signed the deed granting title to the executor of the Colvard estate to hold in trust for the new owners. The next day, on 27 June 1986, the executor-trustee signed a deed of trust naming Wade Vannoy as trustee and Ritz Ray as beneficiary. The executor then disbursed the proceeds to plaintiff, less the amount to cover his portion of the estate debts. Two years later, May 1988, the land was conveyed to Mountain Associates. This 180 acre tract was combined with other surrounding parcels and developed into an exclusive residential country club golf course by Mountain Associates, a partnership composed of Ritz Ray, Eddie Vannoy, Mark Vannoy, Jim Jones and Bob Jones. Plaintiff filed suit on 19 June 1989 claiming civil conspiracy and unfair trade

practices. Summary judgment was granted in favor of defendants. Plaintiff appeals.

Plaintiff assigns as error the trial court's grant of summary judgment for the defendants. Plaintiff's brief on appeal alleges three theories: breach of contract, civil conspiracy, and unfair and deceptive practices. In the trial court's order of summary judgment, the court indicated that "[d]uring the course of oral arguments Plaintiff's counsel stated to the Court that Plaintiff did not contend that he had alleged a claim for breach of contract." Because plaintiff's complaint does not allege a breach of contract and because he failed to argue the issue below, he may not base an appeal on this theory. N.C.R. App. P. Rule 28 (b)(5).

Plaintiff claims that he was coerced into selling his land at a price below market value by several co-conspirators. Plaintiff's recitation of the facts alleges that Jimmy Reeves (executor of the estate), Paul Reeves (auctioneer), Herbert Francis (banker), Ritz Ray, J.C. Faw, Eddie and Mark Vannoy (clients of Jimmy Reeves), James Lyles, and Dallas Sturgill, were the perpetrators of the conspiracy. These people, identified as "the Ashe County Gang" planned to defeat plaintiff's attempt to borrow the funds necessary to pay his part of the estate debts. However, plaintiff elected to sue only the auctioneer, banker, and the Bank.

Our Supreme Court has defined a conspiracy as " 'an agreement between two or more individuals to do an unlawful act or to do a lawful act in an unlawful way.' " *Muse v. Morrison*, 234 N.C. 195, 198, 66 S.E.2d 783, 784 (1951) (citation omitted). Technically, there is no action for civil conspiracy. *Shope v. Boyer*, 268 N.C. 401, 405, 150 S.E.2d 771, 774 (1966). " 'The action is for damages caused by acts committed pursuant to a formed conspiracy, rather than by the conspiracy itself; and unless something is actually done by one or more of the conspirators which results in damage, no civil action lies against anyone.' " *Id.* (citation omitted). Plaintiff must allege facts, not conclusions. *Id.* The act alleged must be overt. *Id.* Conspirators are jointly and severally liable for all the acts of their co-conspirators done in furtherance of the conspiracy. *Muse*, 234 N.C. at 198, 66 S.E.2d at 785.

[1] Plaintiff argues that the best evidence of Paul Reeves' participation in the conspiracy was his solicitation and receipt of bids for the entire 180 acre tract when the contract for sale set the acreage at 30 to 100 acres. As further proof, plaintiff points to

the hefty $60,000.00 commission which Paul Reeves received on the $600,000.00 sale of the entire tract as compared with the smaller amount he would have received on the sale of only 30 acres. We disagree that this evidence reflects membership in a conspiracy. As an auctioneer, Paul Reeves had a "good faith duty . . . to secure for the principal the best bargain and terms that his skill, judgment and diligence can obtain." *Spence v. Spaulding and Perkins, Ltd.,* 82 N.C. App. 665, 667, 347 S.E.2d 864, 865 (1986) (citation omitted). Though the *solicitation* of bids on the entire tract of land may have gone beyond the scope of his contractual authority, to his personal benefit, it does not show an overt act necessary to prove participation in a conspiracy. As to his reviewing bids for the entire tract, this does not reflect a conspiracy. Paul Reeves, as auctioneer, was plaintiff's public agent for the sale of this land. It seems reasonable that anyone with an interest in one lot or the entire tract of land would make inquiries and submit bids to the auctioneer. Summary judgment on the conspiracy issue was properly granted for Paul Reeves.

[2] Plaintiff alleges the same civil conspiracy theory against Mr. Francis and the Bank. The evidence asserted against Mr. Francis concerns his professional and social position. He was the Bank's Senior Vice President, he was a well known banker in the county for 30 years, and was known as a wealthy man. He told plaintiff that the additional $135,000.00 over his lending authorization limit would be no problem. He admitted that he had received calls questioning this loan and exerting subtle pressure on him to make no loan at all. Viewing these allegations as facts and in a light most favorable to plaintiff it does not appear that Mr. Francis was part of a conspiracy. A man's community standing, professional position, or financial status does not, without more, reflect membership in a conspiracy. Even combined with the failure to make the entire $235,000.00 loan, there is no overt act which evidences a conspiracy. Mr. Francis made it clear that he could only authorize $100,000.00 and he upheld this promise by reiterating his willingness to make this loan on the auction date. The receipt of calls regarding the loan does not reflect a conspiracy unless plaintiff could show that Mr. Francis either solicited these calls or that he acquiesced in the caller's demands. The evidence is to the contrary. Mr. Francis continued to make available the $100,000.00 loan that he had promised despite these calls.

[3]  Plaintiff alleges that the defendants' conspiracy and coercive behavior constitute unfair and deceptive practices within N.C.G.S. § 75-1.1. This statute provides:

(a) Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful.

(b) For purposes of this section, "commerce" includes all business activities, however denominated, but does not include professional services rendered by a member of a learned profession.

(d) Any party claiming to be exempt from the provisions of this section shall have the burden of proof with respect to such claim.

N.C.G.S. § 75-1.1 (1988). The statute does not define the terms unfair or deceptive. "To determine whether a particular act is unfair or deceptive, the court must look at the facts surrounding the transaction and the impact on the marketplace." *Bernard v. Central Carolina Truck Sales, Inc.*, 68 N.C. App. 228, 230, 314 S.E.2d 582, 584, *disc. rev. denied*, 311 N.C. 751, 321 S.E.2d 126 (1984) (citation omitted). The jury finds the facts and the court "determine[s] as a matter of law whether the defendant's conduct violated G.S. 75-1.1." *Love v. Pressley*, 34 N.C. App. 503, 516, 239 S.E.2d 574, 583 (1977), *cert. denied*, 294 N.C. 441, 241 S.E.2d 843 (1978). "The purpose of G.S. 75-1.1 is to provide a civil means to maintain ethical standards of dealing between persons engaged in business and the consuming public within this State. . . ." *United Virginia Bank v. Air-Lift Assocs. Inc.*, 79 N.C. App. 315, 319-20, 339 S.E.2d 90, 93 (1986) (citation omitted). If successful, the claimant is entitled to treble damages and attorney's fees. *State ex. rel. Edmisten v. J.C. Penny Co., Inc.*, 292 N.C. 311, 320, 233 S.E.2d 895, 901 (1977).

Plaintiff claims that Paul Reeves' unfair and deceptive act was the soliciting and receiving of bids on the entire 180 acre tract when the auction contract was for a maximum 100 acres. As above, Mr. Reeves had a fiduciary duty to his client to obtain the best price for the land. The sale of the entire 180 acre tract brought the highest price per acre. Three days prior to the 21 June 1986 auction, plaintiff's sister granted an option to purchase the 169 acre tract adjacent to plaintiff's 180 acre tract for $3,000.00 per acre. The lots prepared for the 21 June 1986 sale were actually

auctioned and they brought $2,646.00 per acre. When they did not generate enough money to cover plaintiff's debts, the lots were blocked pursuant to the pre-auction agreement with Mr. Faw and the entire tract was sold to Mr. Faw for $3,394.00 per acre or $600,000.00. As it met his fiduciary obligation to obtain the highest price for plaintiff's land, Mr. Reeves did not commit an unfair or deceptive act by either accepting the $600,000.00 bid or by recommending the sale of the entire tract at this price. Therefore, Mr. Reeves is entitled to summary judgment as a matter of law.

[4] Plaintiff alleges that Mr. Francis and the Bank committed unfair and deceptive practices by promising to make a loan for $235,000.00 and then failing to make this loan. Acts designed to unfairly deny credit are unlawful. *Concrete Serv. Corp. v. Investors Group, Inc.*, 79 N.C. App. 678, 687, 340 S.E.2d 755, 761, *cert. denied*, 317 N.C. 333, 346 S.E.2d 137 (1986) (citing, *Pedwell v. First Union Nat. Bank of North Carolina*, 51 N.C. App. 236, 275 S.E.2d 565 (1981) ). Mr. Francis promised to loan $100,000.00 and he kept this promise. He informed plaintiff that he would have to get approval from Hickory for the remaining $135,000.00. In light of the fact that the additional $135,000.00 loan was not made, the question is whether Mr. Francis' statement that the loan would be "no problem" constitutes the unfair denial of credit. In *Pedwell*, this Court found that a conspiracy existed when a bank obtained a promise by another lender to deny a loan to plaintiffs so that the bank could back out of a deal to sell plaintiffs a condominium. Plaintiff does not allege such an overt act by the Bank not to make the requested loan. The fact that Mr. Francis received phone calls regarding the loans to plaintiff, without anything further, does not show an unfair or deceptive act on the part of Mr. Francis or the Bank. Therefore, both Mr. Francis and the Bank are entitled to summary judgment as a matter of law.

Affirmed.

Judges WYNN and WALKER concur.