LORMIC DEVELOPMENT CORP. v. NORTH AMERICAN ROOFING CO.

[95 N.C. App. 705 (1989)]

667, 351 S.E.2d 277, 279 (1987) ("[e]vidence that another committed the crime for which the defendant is charged generally is relevant and admissible as long as it does more than create an inference or conjecture in this regard."). In the present case there was no proof that another person was even remotely connected with the crime. Defendant did not seek to offer evidence that another person had committed the crime. Instead, he sought to introduce evidence that there was possibly someone in the community who might have resembled the defendant and thereby caused the witnesses all to make an error in their identification. Based upon the extensive identification testimony given by Mrs. Housiadas and Mrs. Koutroulakis and the complete lack of any other evidence linking another person to the crime, the evidence tendered by the defendant is pure conjecture and was properly excluded by the trial court.

No error.

Chief Judge HEDRICK and Judge ORR concur.

---

LORMIC DEVELOPMENT CORPORATION AND SOUTH ISLAND PROPERTIES, A MICHIGAN GENERAL PARTNERSHIP, PLAINTIFFS v. NORTH AMERICAN ROOFING CO., INC., AND DIVERSITECH GENERAL, INC., DEFENDANTS

No. 8926SC23

(Filed 3 October 1989)

1. **Uniform Commercial Code § 10— installation of roof—warranty —notice of defects unnecessary until after execution of warranty**

In an action for breach of warranty in the installation of a roof, the parties intended for the provisions of a manufacturer's sample warranty to ultimately govern defendant installer's obligation, but the parties did not intend for the provisions contained in the sample warranty to take effect until after the warranty was actually executed by defendant; therefore, plaintiffs owed defendants no duty to formally notify them of any defects in the roofing system until the warranties were actually executed, and a genuine issue of material fact existed as to whether plaintiffs timely gave defendants notice of the defects within 30 days after their discovery once the warranties were executed.

LORMIC DEVELOPMENT CORP. v. NORTH AMERICAN ROOFING CO.

[95 N.C. App. 705 (1989)]

### 2. Uniform Commercial Code § 12— implied warranty of merchantability—disclaimer in warranty

In an action for breach of implied warranty of merchantability, the trial court properly entered summary judgment for defendant where the sample warranty attached to the contract and the actual warranty as later executed both effectively disclaimed the warranty of merchantability. N.C.G.S. § 25-2-314.

### 3. Negligence § 29.3— installation of roof—system free from foreseeable defects—jury question

The trial court erred in entering summary judgment against plaintiffs on the issue of negligence in the installation of a roof where, according to South Carolina law which applied in this case, defendant as supplier of the roof had a duty to provide plaintiffs with a roofing system free from foreseeable defects, and there were genuine issues of fact as to the cause of the leaking in plaintiffs' shopping center, the quality and type of material used, and the degree of care used in the . installation of the roofing system.

APPEAL by plaintiffs from *Snepp (Frank W., Jr.), Judge*. Order entered 11 August 1988 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 28 August 1989.

On 22 February 1984 plaintiff South Island Corporation entered into a contract with defendant North American Roofing Co., Inc. ("North American") to provide labor and materials necessary. to construct a roofing system on a shopping center known as South Island Square in Hilton Head, South Carolina. The contract provided, in part, as follows:

> The contractor shall perform all the work required by the contract documents for roofing and sheet metal . . . supply and install General Tire EPDM Ballasted Roof System to General Tire specifications in order for the building owner to receive a ten year labor and a fifteen year material warranty from General Tire and Rubber Company. SAMPLE ATTACHED. . . . WARRANTY: It is understood that said roof is to be completed as aforesaid and warrantied for a period of ten/fifteen years, warrantied by General Tire and Rubber Company, in accordance with General Tire Warranty attached.

A sample warranty was attached to the contract and provided:

> The General Tire and Rubber Company ("General") warrants to the commercial building owner named below ("owner") subject to the terms, conditions, and limitations set forth herein, that the roofing membrane described below is free from defects in workmanship and materials. . . .

Defendant Diversitech General, Inc. ("Diversitech") sold the flexible sheet roofing system (General Tire EPDM ballasted roof system) to North American. The flexible roof system consisted of a rubber membrane, adhesive, caulk, and ballast, applied over a substrate. The contract provided that the roofing system would be installed over polystyrene insulation boards.

The roof was finished by North American on or about June 30, 1984. However, after its installation the plaintiffs discovered numerous leaks and other defects in the roofing system. Plaintiffs discussed these problems with defendants North American and Diversitech from the time the leaks began through 1987.

On February 27, 1985 plaintiffs paid North American the final retainage due under the contract. Although Diversitech was required under the contract to issue its warranties at this time, Diversitech failed to issue any warranties until 25 February 1986. Defendant Diversitech represented to plaintiffs that the delay in issuing the warranties was due to Diversitech's dissatisfaction with the workmanship and the materials used in the roofing system. Diversitech told plaintiffs it was attempting to resolve these questions with North American before issuing any warranties. When the warranties were issued, the plaintiffs believed that whatever problems existed had been resolved to the satisfaction of both defendants. The "Materials and Workmanship" warranty provided that Diversitech warranted to plaintiffs as follows:

> Diversitech . . . warrants to the commercial building owner . . . subject to the terms, conditions, and limitations, set forth herein that for the period in which this . . . Warranty is effective (as shown on the last line hereof), the . . . systems installed on Owner's building . . . shall be free from defects in materials supplied by Diversitech and free from defects in workmanship by the roofing contractor named below.

Under the heading "Terms, Conditions, and Limitations," the warranty further provided:

Owner shall provide Diversitech with written notice of any
defect or leak in the roof and of any claim under this warranty
within . . . 30 days of the discovery of the defect or leak
in the roof. Such notice shall be given by registered mail.

The final sentence in the warranty stipulated that the warran-
ty would be effective from 13 February 1986 to 13 February 1996.
The Limited Membrane warranty stipulated that the roofing mem-
brane would be free from cracks for the designated period and
also contained a 30-day notice provision, a limited remedy provision,
and a disclaimer of warranties provision. The last sentence stipulated
that this warranty would be effective from 13 February 1990 to
13 February 2001.

Sometime after issuance of the warranties by Diversitech, the
roof began leaking again. In November 1986 the plaintiffs formally
notified Diversitech of the leaks and demanded that Diversitech
honor the warranties. Diversitech, however, declined to honor their
warranties and plaintiffs filed suit on 21 May 1988 in Superior
Court against the defendants for breach of express and implied
warranties and for negligence. Defendant Diversitech moved for
summary judgment on all claims asserted against it and this motion
was granted. Plaintiffs appeal and we affirm in part and reverse
in part.

*Underwood, Kinsey & Warren, P.A., by William L. Sitton,
Jr., for plaintiffs-appellants.*

*Hedrick, Eatman, Gardner & Kincheloe, by John F. Morris
and Mika Z. Savir, for defendant-appellee Diversitech General, Inc.*

LEWIS, Judge.

Plaintiffs assert that the trial court erred in granting defend-
ant Diversitech's motion for summary judgment on all of plaintiffs'
claims. Summary judgment is a drastic measure which should be
used with caution since no person should be deprived of a trial
on a genuine issue of material fact. *Williams v. Carolina Power
& Light Co.*, 296 N.C. 400, 402, 250 S.E.2d 255, 257 (1979), *see
also Sauls v. Charlotte Liberty Mutual Insurance Co.*, 62 N.C. App.
533, 303 S.E.2d 358 (1983). In considering a motion for summary
judgment a trial court is bound to view all the evidence and the
inferences therefrom in the light most favorable to the nonmovant.
*Foster v. Winston-Salem Joint Venture*, 303 N.C. 636, 641, 281

S.E.2d 36, 40 (1981). "The slightest doubt as to the facts entitles the non-moving party to a trial." *Ballenger v. Crowell*, 38 N.C. App. 50, 53, 247 S.E.2d 287, 290 (1978). A review of the evidence contained in the record reveals several issues of material fact exist as to plaintiffs' claims entitling them to a trial on the merits.

[1] Addressing first plaintiffs' claim on the breach of express warranty, we find that a genuine issue of material fact exists as to whether plaintiffs gave defendants proper notice of the defects in the roofing system. Neither party denies that they agreed from the outset that warranties would be issued on the materials and workmanship performed in constructing and installing the roofing system. However, plaintiffs contend that they were unaware of any 30-day notice provision contained in Diversitech's warranties until after the warranties were actually issued on 25 February 1986. Alternatively, they argue that the duty to notify Diversitech in writing of any defects within 30 days did not arise until the warranties were actually issued in February 1986.

The "Sample" warranty attached to the original contract made no reference to Diversitech whatsoever, and all other pertinent data, such as the date, the signature of the Diversitech representative, the type of roofing membrane the warranty covered, and the dates for which the warranty was effective were absent on the sample warranty. Furthermore, the sample warranty carried the letterhead of "General Tire Building Products Company" and the terms of the sample warranty only referenced General Tire, whereas the warranties signed and issued by Diversitech carried their own letterhead and specifically referenced Diversitech's duties and obligations under the warranty.

We find as a matter of law that the parties did intend for the provisions of the General Tire sample warranty to ultimately govern Diversitech's obligations under the issued warranty. Paragraph five of the contract specifically references the General Tire warranty attached to the contract as the provisions which would govern the parties' rights and liabilities. Diversitech, as supplier of General Tire's roofing system, simply substituted its letterhead and name in the executed warranty. However, it is clear from the absence of specific data in the sample warranty that the parties did not intend for the provisions contained in the sample warranty to take effect until after the warranty was actually executed in February 1986. Until the warranties were actually exe-

cuted, plaintiffs owed defendants no duty to formally notify them of any defects in the roofing system. This being so, a genuine issue of material fact exists as to whether plaintiffs timely gave defendants notice of the defects within 30 days after their discovery once the warranties were executed.

The evidence is unclear as to whether the leaking problems were temporarily corrected by North American and Diversitech before they issued the warranties in February and then, at some point prior to plaintiff's November 1986 letter, the leaking started once again. If this is indeed what happened, a jury could find that plaintiffs did in fact give defendants timely notice of the defects within thirty days of their discovery after the warranties went into effect. Resolving any doubts in favor of the plaintiffs, we hold that the trial court erred in granting summary judgment on this issue.

[2] Plaintiffs further assign as error the entry of summary judgment on the issue of breach of implied warranty of merchantability. Paragraph six of both the sample General Tire warranty attached to the 22 February 1984 contract, as well as the Diversitech warranty issued on 25 February 1986, conspicuously recite: "Except as stated herein, there are no warranties, express or implied, including warranties of merchantability or fitness for a particular purpose." Under our U.C.C. 2-314, sellers of goods who enter into a contract for the sale of goods are deemed to warrant that the goods are merchantable unless the contract of sale contains an effective disclaimer of this warranty. G.S. 25-2-314. Since we have found that the parties agreed that the terms and conditions of the sample warranty would ultimately govern the rights and liabilities of the parties after its execution, we find that once Diversitech executed its warranty in February 1986, the implied warranty of merchantability was effectively disclaimed. We affirm the trial court's ruling in favor of the defendant on this issue.

[3] Finally, the plaintiffs assign as error the entry of summary judgment against them on the issue of negligence. Because we adhere to the *lex loci delicti* rule in determining conflicts of laws issues in tort, South Carolina tort law governs the determination of this issue. *Childress v. Johnson Motor Lines*, 235 N.C. 522, 524, 70 S.E.2d 558, 560 (1952); *Boudreau v. Baughman*, 322 N.C. 331, 335, 368 S.E.2d 849, 854 (1988) ("[f]or actions sounding in tort, the state where the injury occurred is considered the situs of the

**LORMIC DEVELOPMENT CORP. v. NORTH AMERICAN ROOFING CO.**

[95 N.C. App. 705 (1989)]

claim. Thus, under North Carolina law, when the injury giving rise to a negligence or strict liability claim occurs in another state, the law of that state governs. . . ."). In the present case, the injury to plaintiffs' shopping center occurred in South Carolina, therefore, South Carolina law governs plaintiffs' negligence claim.

Under South Carolina law, product suppliers owe a duty to foreseeable users of their products to exercise reasonable care to provide products that are reasonably fit for their intended use. *Madden v. Cox*, 284 S.C. 574, 328 S.E.2d 108 (Ct. App. 1985), *appeal dismissed*, 286 S.C. 127, 332 S.E.2d 102 (1985).

The affidavits submitted by plaintiffs' expert reveals that at least part of the damage was due to the failure to provide an underlayment board. Use of an underlayment board in the installation of insulation for this type of roofing system is generally accepted industry practice and is recommended by most, if not all, manufacturers of such insulation. Plaintiffs' expert also determined that the leaking was caused by improper installation in violation of the manufacturer's specifications.

It is apparent from studying the record and the various affidavits from both parties that the cause of the leaking in plaintiffs' shopping center, the quality and type of materials used, and the degree of care used in the installation of the roofing system are all vigorously disputed. Diversitech, as supplier of the roof, had a duty to provide plaintiffs with a roofing system free from foreseeable defects. *See JKT Co., Inc. v. Hardwick*, 274 S.C. 413, 265 S.E.2d 510 (1980) (verdict against defendant manufacturer/seller affirmed in action based on negligence for leaking roof where defendant used defective materials in the installation of plaintiffs' roofing system).

We find that there are genuine issues of material fact on the issue of defendant's negligence.

Affirmed in part, reversed in part.

Chief Judge HEDRICK and Judge ORR concur.