**UNITED DOMINION INDUSTRIES, INC., Plaintiff,**

v.

**OVERHEAD DOOR CORP., Defendant.**

**No. C–C–91–18–MU.**

United States District Court, W.D. North Carolina, Charlotte Division.

April 11, 1991.

David C. Wright, III, Robinson, Bradshaw & Hinson, Charlotte, N.C., for plaintiff.

John T. Allred, F. Joseph Tracy, Jr., Petree, Stockton & Robinson, Charlotte, N.C., Terence M. Murphy, Jones, Day, Reavis & Pogue, Dallas, Tex., for defendant.

## ORDER

MULLEN, District Judge.

This matter is before the Court on defendant's motion to dismiss the third count of the complaint. After a hearing on the motion, the Court took the matter under advisement.

United Dominion Industries, Inc. ("United Dominion") brought this action against Overhead Door Corporation ("Overhead Door") regarding its recent purchase of the assets of AEP–Span, a division of Overhead Door. The complaint alleges breaches of the asset purchase agreement through misstatements of earnings, misleading earnings forecasts, overstated inventory and concealment of a material downturn in AEP–Span's business. The complaint seeks rescission of the sale in count one, indemnification pursuant to the agreement in count two, and damages for unfair and deceptive trade practices in count three.

Defendant has moved to dismiss count three of the complaint, which is brought under N.C.Gen.Stat. § 75–1.1.[1] The motion centers around the applicable law, rather than the sufficiency of the allegations in the count. Defendant argues that the state law of Texas should apply to the alleged unfair and deceptive acts and that therefore the count based on the North Carolina statute must be dismissed.

Under the rule of *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and 28 U.S.C. § 1652, a federal court sitting in a diversity action must apply the substantive law of the forum state. In resolving a conflict of law question, a federal court should apply the choice of law rules of the state in which the court sits. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Therefore, this Court will apply the North Carolina choice of law rules in determining which law applies to the allegedly unfair and deceptive acts.

### I. Contractual Provision Regarding Applicable Law

The contract entered into between the parties provides in section 25.11 that "This Agreement shall be governed by and construed in accordance with the laws of the State of Texas applicable to contracts made and to performed therein." Defendant argues that this provision requires that Texas law be applied to any count based on unfair or deceptive acts and that the count based on N.C.Gen.Stat. § 75–1.1 must be dismissed. Defendant also submits that plaintiff can not bring a claim on this ground under Texas law because Texas's statute prohibiting unfair and deceptive

---

1. N.C.G.S. § 75–1.1 provides in part that "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful."

N.C.G.S. §§ 75–16 and 75–16.1 provide for treble damages and attorney fees in a civil action by a party injured by a violation of the statute.

trade practices applies only to consumers with assets of $25 million or less, which would exclude United Dominion. Texas Bus. & Commerce § 17.45(4).

■ The contractual provision here may govern the choice of laws as to the interpretation and construction of the contract; however, it does not provide the applicable law for a claim based on unfair and deceptive acts. As explained in *ITCO Corp. v. Michelin Tire Corp., Com. Div.*, 722 F.2d 42, 49, n. 11 (4th Cir.1983), *cert. denied*, 469 U.S. 1215, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985), the nature of the liability under N.C.Gen.Stat. § 75–1.1 is *ex delicto*, not *ex contractu*. Therefore, North Carolina courts would ignore the contractual choice of law provision in determining whether N.C.Gen.Stat. § 75–1.1 applies. *See, United Virginia Bank v. Air–Lift Associates*, 79 N.C.App. 315, 339 S.E.2d 90, 93 (N.C. App.1986) (referring to this portion of the *ITCO* decision as "persuasive.") Because the liability under N.C.Gen.Stat. § 75–1.1 is not contractual, the choice of law provision included in the agreement, which is limited to the Texas laws applicable to contracts, is not applicable.

II. North Carolina's Choice of Law Rule

■ The parties have identified two possible tests that North Carolina courts might apply in determining the choice of law question raised here. The North Carolina courts may apply the traditional *lex loci delicti* rule or the modern "most significant relationship" test. A review of the case law, as shown below, yields no clear answer because the North Carolina Supreme Court has not specifically addressed the issue and the Court of Appeals has used both tests recently.

This Court is required to make a prediction as to how North Carolina courts would resolve this question in the face of North Carolina cases applying both tests. This case is instructive in demonstrating the continued need for a procedure to allow referral of important questions such as this to the North Carolina Supreme Court to obtain a definitive statement.

The North Carolina Court of Appeals applied the *lex loci* test to a claim based upon N.C.Gen.Stat. § 75–1.1 in *United Virginia*, 339 S.E.2d at 93–94. The court considered the most significant relationship test, but found that the "better rule" chooses the law of the place where the injuries are sustained. The court explained that the "law of the State where the last act occurred giving rise to the defendants' injury governs" the action. *Id.* at 94. Similarly, the Fourth Circuit has interpreted *Lloyd v. Carnation Co.*, 61 N.C.App. 381, 301 S.E.2d 414 (1983), as requiring the application of the law of the state where the injuries are sustained. *ITCO*, 722 F.2d at 49, n. 11. In 1988, the North Carolina Supreme Court refused to adopt the most significant relationship test in a products liability case and instead reaffirmed the well-settled rule of *lex loci* in tort actions, explaining that "[f]or actions sounding in tort, the state where the injury occurred is considered the situs of the claim." *Boudreau v. Baughman*, 322 N.C. 331, 368 S.E.2d 849, 854 (1988).[2]

On the other hand, the North Carolina Court of Appeals has applied the most significant relationship test in two cases involving claims under N.C.Gen.Stat. § 75–1.1. *Michael v. Greene*, 63 N.C.App. 713, 306 S.E.2d 144 (1983); *Andrew Jackson Sales v. Bi–Lo Sales, Inc.*, 68 N.C.App. 222, 314 S.E.2d 797 (1984). In addition, federal courts attempting to forecast action of North Carolina courts have chosen to

**2.** The Court recognizes that the North Carolina Court of Appeals in *Bernard v. Central Carolina Truck Sales,* 68 N.C.App. 228, 314 S.E.2d 582, *dis. rev. denied,* 311 N.C. 751, 321 S.E.2d 126 (1984), stated that an unfair trade or practice act, which is the creation of statute, is neither wholly tortious nor contractual in nature. However, given the trend toward use of the most significant relationship test in tort actions in general, the rejection of this test for general torts by the North Carolina Supreme Court supports a view that the North Carolina courts would also reject the test in the quasi-tort claim of unfair and deceptive acts. The *Boudreau* ruling on this point has been followed recently in *Lormic Dev. v. North American Roofing,* 95 N.C.App. 705, 383 S.E.2d 694 (1989), *dis. rev. denied,* 326 N.C. 48, 389 S.E.2d 90 (1990) and *Braxton v. Anco Elec., Inc.,* 100 N.C.App. 635, 397 S.E.2d 640 (1990).

apply the most significant relationship test in *Simms Inv. Co. v. E.F. Hutton & Co. Inc.,* 688 F.Supp. 193, *recon. granted,* 699 F.Supp. 543 (M.D.N.C.1988) and *American Rockwool, Inc. v. Owens–Corning Fiberglas,* 640 F.Supp. 1411 (E.D.N.C.1986).

In the absence of a method to refer questions such as this to the North Carolina Supreme Court, this Court must now join other federal district courts in a prognostication of how the North Carolina Supreme Court would resolve the divergence in the case law. With due regard for the decisions of other federal courts, this Court concludes that based upon recent case law, North Carolina would apply the traditional *lex loci* rule rather than the most significant relationship test.

The Court places particular importance on the decision in *United Virginia* which rejected the most significant relationship test in favor of the traditional test. *United Virginia* was decided in 1986 and is the last North Carolina court decision dealing with a choice of law problem involving N.C. Gen.Stat. § 75–1.1. As shown by the *Boudreau* decision, the North Carolina Supreme Court has shown no lack of confidence in the traditional *lex loci* test for general torts. This Court will therefore accept the decision of the last North Carolina court to speak to this issue.

The district court decision in *American Rockwool* is dated June 18, 1986, several months after the decision in *United Virginia*. However, because the *American Rockwool* decision does not cite *United Virginia,* the court may not have had the benefit of the recent North Carolina case on the issue. The decision in *American Rockwool* to apply the most significant relationship test relied heavily on the decisions in *Michael v. Greene* and *Andrew Jackson* and "assumed" that North Carolina would apply the most significant relationship test because of these decisions. *American Rockwool,* 640 F.Supp. at 1430. However, both of these decision have been called into question by the more recent *United Virginia* decision.

The district court in *Simms* did have *United Virginia* before it and concluded that the North Carolina courts would still apply the most significant relationship test. However, *Simms* was decided one week after the North Carolina Supreme Court reaffirmed its use of *lex loci* for tort claims in *Boudreau* and apparently this decision was not circulated in time for the *Simms* case to consider it. More importantly, *Simms* dealt with securities fraud, and the court on reconsideration concluded that it erred in its conclusion that a conflict of laws question was even present. *Simms Inv. Co. v. E.F. Hutton & Co. Inc.,* 699 F.Supp. 543 (M.D.N.C.1988). As a result, the discussion of the conflicts issue in the prior opinion in *Simms* is clearly dicta.

This Court feels that *Boudreau* is an important case in understanding North Carolina law on this point and demonstrates a commitment in North Carolina to the *lex loci* test. This Court relies heavily upon the *Boudreau* decision and the *United Virginia* decision, the most recent North Carolina decision on point, in concluding that a North Carolina court would apply the *lex loci* test to this issue.

III. Application of the *Lex Loci* Test

As discussed in *United Virginia,* application of the *lex loci* test requires a determination of where the injuries were sustained; the law of the state where this occurred then governs. *United Virginia,* 339 S.E.2d at 93. The *lex loci* rule reaffirmed in *Boudreau* indeed simplifies analysis in cases of personal injury and many torts. It is generally clear where someone sustains an injury in such cases. However, in a commercial action such as this one, determining the place that the injury occurred is not especially self-evident. *American Rockwool,* 640 F.Supp. at 1429, n. 8.

Plaintiff argues that it sustained injury in North Carolina because the financial damage from the asset purchase is felt at its corporate headquarters located in North Carolina. Plaintiff places importance on the location of its "pocketbook," which suffered the damage. Defendant contends that the injury was sustained where the last act which caused the injury took place,

in this case in Texas, where the closing of the sale took place.

*United Virginia* explained that the place where the injury was sustained is the place "where the last act occurred giving rise to defendants' injury." *United Virginia*, 339 S.E.2d at 94. *United Virginia* involved a suit on a promissory note held by a bank and secured by a plane. After the plane was turned over to the bank in North Carolina due to a deficiency in payments on the note, the bank refused to sell the plane to a willing buyer who was also a guarantor on the note. Instead, the bank had the plane flown to Virginia where it was sold at a public sale. The bank then sued to recover the deficiency remaining after the sale, and the defendant alleged violations of N.C. Gen.Stat. § 75–1.1 in the refusal to sell the plane to a willing buyer and the sale in a commercially unreasonable manner. In determining the law applicable to the Sec. 75–1.1 claim, the court held that the last act giving rise to the claim was the sale of the plane in Virginia. Therefore, it chose to apply Virginia law. The *United Virginia* case points strongly toward a holding here that Texas law should apply because the closing of the sale took place there and was the last act giving rise to the cause of action.[3]

Plaintiff has provided several decisions in which the location of the "pocketbook" was given great consideration by courts. In *ITCO*, the Fourth Circuit in a footnote providing a "comment" on the choice of law issue opined that because ITCO sustained injury in North Carolina, where the corporation had its principal place of business, the law of North Carolina would apply. *ITCO*, 722 F.2d at 49, n. 11. In *ITCO*, a tire manufacturer terminated dealership arrangements with some of its large dealers. It appears that ITCO operated either exclusively or primarily in North Carolina, and the only apparent argument for application of another state's law was a contractual provision providing for the use of New York law, which the court found, as here, not applicable to a claim under N.C.Gen. Stat. § 75–1.1. This Court does not read *ITCO* as providing a bright line rule that in all cases a injury is sustained where corporate headquarters are located.

In *American Rockwool*, the district court relied upon the language in *ITCO* for a conclusion in dicta that the place of injury was the principal place of business where the company loses profits. *American Rockwool*, 640 F.Supp. at 1429, n. 8. However, this case involved loss of sales in many different states; there was no single clear alternative to North Carolina law, as there is here. Also, the discussion in *American Rockwool* is clearly dicta because it chose to apply the most significant relationship test, not the *lex loci* test.

Plaintiff has provided after the hearing several decisions in other jurisdictions for its claim that the place of injury is where the economic damage is recorded. The Court does not find these cases helpful.[4]

On balance, defendant's position seems sounder. Plaintiff's position would allow a corporation to conduct an entire transaction in a foreign jurisdiction and urge the law of the corporation's state of residency in subsequent litigation. Indeed, since plaintiff is a subsidiary of a Canadian corporation, by this rationale the ultimate injury may have occurred in Canada.

The last act which caused the injury which plaintiff complains of occurred in

---

**3.** Although the discussion in the case is not complete, the court in *Lloyd v. Carnation*, 61 N.C.App. at 381, 301 S.E.2d at 414, also found the last wrongful act to be the sale of property in question. However, because it appears that most, if not all, of the meetings and negotiations were also held in the state of sale, its guidance on the choice of law issue is not as clear as that of *United Virginia*.

**4.** In *Hill v. Equitable Trust Co.*, 562 F.Supp. 1324, 1334 (D.De.1983), the discussion regarding the application of the law of the place where the

plaintiff resided was dictum. This case also involved a 10b–5 action rather than a claim based on unfair and deceptive trade practices. *Miller v. Lear Siegler, Inc.*, 525 F.Supp. 46, 56 (D.Kan.1981), is inapposite to this case. Finally, *Mergenthaler Linotype Co. v. Leonard*, 66 Ill.App.3d 789, 23 Ill.Dec. 352, 383 N.E.2d 1379 (1978), does provide some support to plaintiff. However, it appears that the court focused less on the place of injury, which is the test applied in this case, and more on the principal location of the conduct.

Texas when the transaction closed. At closing, the contract was no longer executory, but fully executed. It was in Texas that defendant conveyed the assets and plaintiff delivered its money. In short, at closing the relationship between the parties became vendor and vendee. In addition, if the defendant's warranties were breached it occurred at closing and the alleged physical shortcomings in the assets purchase, including the overstatement or shortfall of inventory, also took place in Texas. Because the last act giving rise to the claim occurred in Texas, the law of the state of Texas will apply to the third count of the complaint.

IV. Conclusion

The rule of *lex loci* requires that the law of Texas apply to any claim by plaintiff based on unfair and deceptive conduct. Therefore, the third count based on North Carolina law will be dismissed. Although Texas law appears not to grant plaintiff standing to bring an action under its consumer protection statute (Texas Bus. & Commerce § 17.45(4)), the Court will freely give leave to amend the complaint to plaintiff if it has a Texas-based count that it wishes to bring in lieu of the action under N.C.Gen.Stat. § 75–1.1.

IT IS THEREFORE ORDERED that defendant's motion to dismiss count three of the complaint is GRANTED.